LORIE M. GUYES, *et al.*,

    Plaintiff,

    v.

NESTLÉ USA, INC.,

    and

BOARD OF DIRECTORS OF
NESTLÉ USA, INC.,

    and

JOHN AND JANE DOES 1-30,

    Defendants.

Case No. 1:20-cv-01560-WCG

Hon. William C. Griesbach

---

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S COMPLAINT**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................1

BACKGROUND ...................................................................................................2

ARGUMENT .......................................................................................................4

I.    PLAINTIFF'S DUTY OF PRUDENCE CLAIMS SHOULD BE DISMISSED
      (COUNTS I AND II) ...................................................................................5

      A.    Plaintiff Fails to Plausibly Allege That Defendants Caused the Plan to Pay
            Excessive Recordkeeping Fees ...........................................................6

            1.    Plaintiff's Direct Allegations of Defendants' Alleged Procedural
                  Imprudence Fail to State a Claim...............................................6

            2.    Plaintiff's Circumstantial Allegations of "Excessive" and
                  "Unreasonable" Fees Also Fail to State a Claim of Imprudence...............10

      B.    Plaintiff's Claims Regarding the Plan's Managed Account Services Fees
            Fail Due to a Lack of Standing as well as Plausibility ...........................14

            1.    Plaintiff Lacks Standing to Challenge the Plan's Managed Account
                  Fees ..............................................................................15

            2.    Plaintiff's Managed Account Services Allegations Do Not State a
                  Plausible Claim of Imprudence..................................................16

II.   PLAINTIFF'S DUTY OF LOYALTY CLAIMS SHOULD BE DISMISSED
      (COUNTS I AND II) ...................................................................................19

III.  PLAINTIFF'S DUTY TO MONITOR CLAIMS SHOULD BE DISMISSED
      (COUNTS III AND IV)................................................................................20

IV.   PLAINTIFF'S PROHIBITED TRANSACTION CLAIM SHOULD BE
      DISMISSED (COUNT V) ...........................................................................22

V.    PLAINTIFF'S CLAIMS AGAINST THE BOARD OF DIRECTORS SHOULD
      BE DISMISSED IN THEIR ENTIRETY (COUNTS I-V) ...............................24

CONCLUSION......................................................................................................26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alas v. AT&T Inc.*,
   2019 WL 1744847 (C.D. Cal. Feb. 25, 2019)..........................................................................25

*Alki Partners, L.P. v. Vatas Holding GMBH*,
   769 F. Supp. 2d 478 (S.D.N.Y. 2011), *aff'd sub nom Alki Partners, L.P. v.*
   *Windhorst*, 472 Fed. Appx. 7 (2d Cir. 2012) ........................................................................25

*Amgen, Inc., v. Harris*,
   136 S. Ct. 758 (2016).................................................................................................................5

*Ashcroft v. al-Kidd*,
   563 U.S. 731 (2011).................................................................................................................2

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).................................................................................................5, 19, 24, 25

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).................................................................................................................5

*Board of Trustees of Operating Eng'rs Pension Trust v. JPMorgan Chase Bank*,
   2012 WL 1382274 (S.D.N.Y. Apr. 20, 2012)..........................................................................16

*Braden v. Wal-Mart Stores, Inc.*,
   588 F.3d 585 (8th Cir. 2009) ....................................................................................................6

*Cohen v. Am. Sec. Ins. Co.*,
   735 F.3d 601 (7th Cir. 2013) ..................................................................................................22

*Daugherty v. Univ. of Chicago*,
   2017 WL 4227942 (N.D. Ill. Sept. 22, 2017) ....................................................................16, 19

*Davis v. Salesforce.com, Inc.*,
   2020 WL 5893405 (N.D. Cal. Oct. 5, 2020)..........................................................................18

*Del Castillo v. Cmty. Child Care Council of Santa Clara County, Inc.*,
   2019 WL 6841222 (N.D. Cal. Dec. 16, 2019)..........................................................................8

*Divane v. Northwestern Univ.*,
   953 F.3d 980 (7th Cir. 2020), *pet. for cert. filed sub nom. Hughes v.*
   *Northwestern Univ.*, No. 19-1401 (U.S. filed June 19, 2020) ........................................ *passim*

*Farnik v. F.D.I.C.*,
   707 F.3d 717 (7th Cir. 2013) ..................................................................................................15

Page(s)

*Ferguson v. Ruane Cunniff & Goldfarb, Inc.*,
    2019 WL 4466714 (S.D.N.Y. Sept. 18, 2019)..........................................................................8

*Fifth Third Bancorp v. Dudenhoeffer*,
    573 U.S. 409 (2014)...................................................................................................4, 7

*George v. Kraft Foods Global, Inc.*,
    641 F.3d 786 (7th Cir. 2011) ...................................................................................9

*Hecker v. Deere & Co.*,
    556 F.3d 575 (7th Cir. 2009) .........................................................................2, 3, 9, 12

*Howell v. Motorola, Inc.*,
    633 F.3 552, 572-73 (7th Cir. 2011) .....................................................................20

*Kannapien v. Quaker Oats Co.*,
    507 F.3d 629 (7th Cir. 2007) .............................................................................5, 21

*Klosterman v. Western Gen. Management, Inc.*,
    32 F.3d 1119 (7th Cir. 1994) .............................................................................25

*Kong v. Trader Joe's Company*,
    2020 WL 5814102 (C.D. Cal. Sept. 24, 2020) ...................................................9

*Kong v. Trader Joe's Company*,
    2020 WL 7062395 (C.D. Cal. Nov. 30, 2020)...........................................8, 12, 13

*Leber v. Citigroup 401(k) Plan Inv. Comm. (Leber II)*,
    129 F. Supp. 3d 4 (S.D.N.Y. 2015) .....................................................................7

*Loomis v. Exelon Corp.*,
    658 F.3d 667 (7th Cir. 2011) ..............................................................................2, 19

*Marks v. Trader Joe's Co.*,
    2020 WL 2504333 (C.D. Cal. Apr. 24, 2020) .............................................8, 9, 11

*Marshall v. Northrop Grumman Corp.*,
    2017 WL 2930839 (C.D. Cal. Jan. 30, 2017) .......................................................16

*Marvin v. Mercy Health Corp.*,
    No. 3:20-cv-50293 (N.D. Ill., filed Aug. 6, 2020)....................................................1

*Meiners v. Wells Fargo & Co.*,
    2017 WL 2303968 (D. Minn. May 25, 2017)........................................................13

Case 1:20-cv-01560-WCG   Filed 12/08/20   Page 4 of 33   Document 14

**Page(s)**

*Meiners v. Wells Fargo & Co.*,
    898 F.3d 820 (8th Cir. 2018) ..................................................12

*Meyers v. Nicolet Rest. Of De Pere, LLC*,
    843 F.3d 724 (7th Cir. 2016) ..................................................15

*Nell v. Zell*,
    677 F. Supp. 2d 1010 (N.D. Ill. 2009), *as amended* (Mar. 11, 2010) ....................21

*In re Northrop Grumman Corp. ERISA Litig.*,
    2010 WL 11469724 (C.D. Cal. Aug. 12, 2010) ..................................................23

*Ortiz v. American Airlines, Inc.*,
    2020 WL 4504385 (N.D. Tex. Aug. 5, 2020) ..................................................16

*Patrico v. Voya Financial, Inc.*,
    2018 WL 1319028 (S.D.N.Y. Mar. 13, 2018) ..................................................14

*Patterson v. Stanley*,
    2019 WL 494834 (S.D.N.Y. Oct. 7, 2019) ..................................................18

*Payton v. Cty. of Kane*,
    308 F.3d 673 (7th Cir. 2002) ..................................................15

*Pegram v. Herdrich*,
    530 U.S. 211 (2000) ..................................................22, 24

*Ramos v. Banner Health*,
    2020 WL 2553706 (D. Colo. May 20, 2020) ..................................................12

*Roth v. Sawyer-Cleator Lumber Co.*,
    16 F.3d 915 (8th Cir. 1994) ..................................................10

*Sacerdote v. New York Univ.*,
    2017 WL 3701482 (S.D.N.Y. Aug. 25, 2017) ..................................................20

*Sacerdote v. New York Univ.*,
    328 F. Supp. 3d 273 (S.D.N.Y. 2018) ..................................................10, 12

*Schweitzer v. Invest. Comm. of Phillips 66 Savings Plan*,
    312 F. Supp. 3d 608 (S.D. Tex. 2018) ..................................................16

*Simi Surgical Center, Inc. v. Conn. Gen. Life Ins. Co.*,
    2018 WL 6332285 (C.D. Cal. Jan. 4, 2018) ..................................................17

Case 1:20-cv-01560-WCG   Filed 12/08/20   Page 5 of 33   Document 14

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016) ................................................................................................. 15

*PBGC ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv.*
   *Mgmt. Inc.*,
   712 F.3d 705 (2d Cir. 2013) ............................................................................................ 5

*Sweda v. Univ. of Pennsylvania*,
   923 F.3d 320 (3d Cir. 2019) ......................................................................................... 24

*Thole v. U.S. Bank, N.A.*,
   140 S. Ct. 1615 (2020) ........................................................................................... 15, 16

*Troudt v. Oracle Corp.*,
   2019 WL 1006019 (D. Colo. Mar. 1, 2019) .................................................................. 8, 9

*White v. Chevron Corp.*,
   2016 WL 4502808 (N.D. Cal. Aug. 29, 2016) ............................................................. 8, 21

*White v. Chevron Corp.*,
   2017 WL 2352137 (N.D. Cal. May 31, 2017) ................................................................. 11

*Williamson v. Curran*,
   714 F.3d 432 (7th Cir. 2013) ......................................................................................... 18

*Young v. Gen. Motors Inv. Mgmt. Corp.*,
   325 F. App'x 31 (2d Cir. 2009) ...................................................................................... 13

**Statutes, Rules and Regulations**

29 U.S.C. § 1106(a)(1) ........................................................................................................ 22

29 U.S.C. § 1106(b)(1) ........................................................................................................ 22

29 C.F.R. § 2550.408b-2(e)(3) ............................................................................................. 23

75 Fed. Reg. 41,600, 41,619 (July 16, 2010) ......................................................................... 9

# INTRODUCTION

To effectively administer large and complex employee benefit plans, plan fiduciaries must rely on a combination of internal benefits professionals and third-party service providers. These individuals and entities provide essential services that are both necessary to a plan's day-to-day operation (*e.g.*, tracking account balances) and beneficial to participants (*e.g.*, providing investment advisory services). Because employee benefit plans come in myriad shapes and sizes, the Employee Retirement Income Security Act of 1974 ("ERISA") does not dictate the level or scope of such services, nor does it impose bright-line rules on how much these services should cost. Instead, it properly leaves such decisions to the discretion of each plan's fiduciaries.

In this putative class action lawsuit, one of more than eleven similar lawsuits brought by Plaintiff's counsel since June of this year, Plaintiff Lorie M. Guyes ("Plaintiff"), a single participant among the 39,000-plus participants in the Nestlé 401(k) Savings Plan (the "Plan"), aims to substitute her judgment for that of the Plan's fiduciaries.[1] Relying on scant factual assertions and mere speculation, Plaintiff claims that Nestlé USA, Inc. ("Nestlé"), the Board of Directors of Nestlé USA, Inc. ("the Board"), and other unnamed Doe defendants (collectively, "Defendants"),[2] could have reduced certain costs or obtained better services for the same price, and violated ERISA

---

[1] *See Albert v. Oshkosh Corp.*, 20-cv-901-WCG (E.D. Wis., filed June 16, 2020); *Soulek v. Costco Corp.*, No. 1:20-cv-937-WCG (E.D. Wis., filed June 23, 2020); *Cotter v. Matthews Int'l Corp.*, No. 1:20-cv-1054-WCG (E.D. Wis., filed July 13, 2020); *O'Driscoll v. Plexus Corp.*, No. 1:20-cv-1065-WCG (E.D. Wis., filed July 14, 2020); *Nohara v. Prevea Clinic, Inc.*, No. 2:20-cv-1079-LA (E.D. Wis., filed July 16, 2020); *Marvin v. Mercy Health Corp.*, No. 3:20-cv-50293 (N.D. Ill., filed Aug. 6, 2020); *Lange v. Infinity Healthcare Physicians, S.C.*, No. 3:20-cv-737 (W.D. Wis., filed Aug. 7, 2020); *Glick v. Thedacare, Inc.*, 1:20-cv-1236-WCG (E.D. Wis., filed Aug. 12, 2020); *Woznicki v. Aurora Health Care, Inc.*, No. 2:20-cv-1246-PP (E.D. Wis., filed Aug. 14, 2020); *Laabs v. Faith Technologies, Inc.*, No. 1:20-cv-01534 (E.D. Wis. filed Oct. 2, 2020); *Guyes v. Nestlé USA, Inc.*, No. 20-cv-1560 (E.D. Wis. filed Oct. 9, 2020). Given that ERISA's standard of prudence requires that fiduciary conduct be judged by comparison to a person "acting in a like capacity" and engaged "in the conduct of an enterprise of a like character and with like aims," 29 U.S.C. § 1104(a)(1)(B), Plaintiff's counsel's widespread targeting of retirement plan sponsors and fiduciaries undermines the plausibility of her claims.

[2] Except as discussed *infra*, at 24, this motion does not apply to the Doe defendants, none of whom have been identified or served with summons.

---

by not doing so. Specifically, Plaintiff claims that (i) Defendants could have lowered the amount the Plan paid for recordkeeping by perpetually haggling with service providers or constantly switching from one provider to another to obtain lower fees; (ii) the Plan's optional investment advisory services—which she never used and for which she was never charged—were not worth the cost; and (iii) the Plan's reimbursement of Nestlé for certain Plan-related services were prohibited transactions, despite alleging no facts or law establishing the basis for such a claim.

None of Plaintiff's claims have merit. Putting aside Plaintiff's threshold problems, such as her lack of standing to pursue claims related to services she never used, and her failure to satisfy the basic pleading requirements of Rule 8, her allegations and the legal theories upon which her claims are based are foreclosed by binding precedent. In a series of cases involving materially indistinguishable claims, the Seventh Circuit has repeatedly affirmed the discretion afforded to plan fiduciaries and rejected individual participants' efforts to second-guess fiduciary decision-making and impose their preferences on plans. *See, e.g., Divane v. Northwestern Univ.*, 953 F.3d 980 (7th Cir. 2020); *Loomis v. Exelon Corp.*, 658 F.3d 667 (7th Cir. 2011); *Hecker v. Deere & Co.*, 556 F.3d 575 (7th Cir. 2009). In accordance with this triad of controlling Seventh Circuit authority, the Court should dismiss Plaintiff's complaint with prejudice.

## BACKGROUND

Plaintiff is a participant in the Plan, which is an individual account defined contribution plan organized under section 401(k) of the Internal Revenue Code, 26 U.S.C. § 401(k).[3] Compl. ¶ 3. The purpose of a defined contribution plan is to provide participants with a tax-qualified vehicle

---

[3] Defendants' recitation of the factual background is based on the allegations in Plaintiff's "Class Action Complaint for Claims under 29 U.S.C. § 1132(a)(2)" ("Compl."). ECF No. 1, Compl., *et seq.* Although many of Plaintiff's allegations are factually inaccurate, except where judicially noticeable material shows otherwise, Defendants treat those allegations as true for the limited purpose of the instant motion. *Ashcroft v. al-Kidd*, 563 U.S. 731, 734, 742 (2011) (holding that in evaluating "a motion to dismiss, [the court] accept[s] as true the factual allegations in [the] complaint.").

2

through which they can save and invest for retirement. Each Plan participant has an individual account that is funded through a combination of employee salary deferrals and Nestlé's generous employer contributions (up to 4% of the participant's eligible pay). Ex. 1, 2016 Nestle 401(k) Plan Summary Plan Description ("2016 SPD"), at 12.[4] Although the participants and Nestlé both contribute to individual participants' accounts, the participants have the freedom to decide how to invest those contributions. *Id.*, at 15. Over the course of the putative class period (October 2014 – present), participants were able to invest in a variety of investment options, including "Core Funds" representing a broad selection of asset classes, Target Date Funds, and a brokerage window administered by TD Ameritrade. *Id.*

The Plan provides that Nestlé is both the plan sponsor and the formal "plan administrator." Compl. ¶ 22. However, like many other 401(k) plans, Nestlé did not itself perform all of the administrative tasks necessary to operate the Plan. Instead, Nestlé appropriately outsourced certain day-to-day operational and administrative responsibilities to a third-party "recordkeeper." Compl. ¶¶ 37-38. These recordkeeping services included, but were not limited to, maintaining plan records, tracking participant account balances and investment elections, processing transactions, providing a call center to answer participant questions, preparing participant communications, and providing trust and custodial account services. Compl. ¶ 37. Throughout the putative class period, Voya Institutional Plan Services ("Voya") served as the Plan's recordkeeper. Compl. ¶ 83.

In addition to the suite of recordkeeping services that Voya provided to all Plan participants, the Plan offered participants the option to enroll in a "managed account service" provided by Voya Retirement Advisors, LLC ("VRA"). Compl. ¶ 116. This voluntary service

---

[4] The Court may consider plan documents and summary plan descriptions without converting a motion to dismiss into a motion summary judgment. *See Hecker*, 556 F.3d at 583.

3

enabled participants to access customized investment advice designed to assist them with investing for their retirement. Compl. ¶ 117; Ex. 1, 2016 SPD, at 35. Participants who enrolled in VRA's managed account service received customized investment portfolios and advice based on their individual circumstances, such as their risk tolerance and projected retirement date. Compl. ¶ 64. To compensate VRA for this additional service, enrolled participants paid a small fee based on a percentage of the assets in their individual accounts. Compl. ¶ 118. Participation was entirely optional and only those participants who affirmatively chose to "opt-in" were charged. Compl. ¶¶ 65, 118.

In her Complaint, Plaintiff asserts five claims for relief ("Counts") focused on three different categories of Plan expenses: (i) Voya's recordkeeping fees, (ii) VRA's managed account service fees, and (iii) the Plan's reimbursement of Nestlé for its Plan-related services. In Count I, Plaintiff alleges that Defendants breached their fiduciary duties of loyalty and prudence with respect to the Plan's recordkeeping fees. Compl. ¶¶ 149-160. In Count II, Plaintiff alleges that Defendants breached their fiduciary duties of loyalty and prudence with respect to the Plan's managed account service fees. Compl. ¶¶ 161-172. In Counts III and IV, which are derivative of Counts I and II, Plaintiff alleges that Defendants breached their fiduciary duties by "failing to monitor" Nestlé with respect to its review of the Plan's recordkeeping arrangement with Voya and the managed account services provided by VRA. Compl. ¶¶ 173-186. Finally, in Count V, Plaintiff claims that the Plan's reimbursement of Nestlé for costs it incurred in providing services to the Plan constituted prohibited transactions. Compl. ¶¶ 187-192.

## ARGUMENT

In ERISA class actions asserting fiduciary breaches, a motion to dismiss is an "important mechanism for weeding out meritless claims." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409,

4

424 (2014). A district court should not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), an ERISA plaintiff's claim must be "plausible," meaning that it raises "more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. Conduct that is "consistent with" both a fiduciary breach and rational decision-making cannot support a claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007). In making that determination, a court must accept well-pleaded allegations as true and draw reasonable inferences in the plaintiff's favor, but it "need not accept as true statements of law or unsupported conclusory factual allegations." *Divane*, 953 F.3d at 987. Mere conclusions and a "formulaic recitation of the elements of a cause of action" do not suffice to state an actionable claim. *Twombly*, 550 U.S. at 555.

## I.    PLAINTIFF'S DUTY OF PRUDENCE CLAIMS SHOULD BE DISMISSED (COUNTS I AND II)

To state a claim for breach of fiduciary duty under ERISA, a plaintiff must plead and prove: "(1) that defendants are plan fiduciaries; (2) that defendants breached their fiduciary duties; and (3) that their breach caused harm to the plaintiff." *Kannapien v. Quaker Oats Co.*, 507 F.3d 629, 639 (7th Cir. 2007). When alleging a breach of the fiduciary duty of prudence, a plaintiff "must plausibly allege action that was objectively unreasonable." *Divane*, 953 F.3d at 988. This requires her to show that "a prudent fiduciary in the same position could not have concluded that the alternative action would do more harm than good." *Id.* (quoting *Amgen, Inc.*, *v. Harris*, 136 S. Ct. 758, 760 (2016)). That is, the path not taken must have been unambiguously better. To meet this standard, a plaintiff must either (i) identify specific procedural deficiencies that deviated from industry standards (*i.e.*, direct allegations) or (ii) set forth well-pleaded "circumstantial factual allegations" from which a court may "reasonably 'infer . . . that the process was flawed'" (*i.e.*,

circumstantial allegations). *PBGC ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 718, 727 (2d Cir. 2013) (quoting *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 596 (8th Cir. 2009)). Plaintiff fails to do either with respect to her challenges to the Plan's recordkeeping fees and managed account services fees. This is fatal to her claims.

### A.  Plaintiff Fails to Plausibly Allege That Defendants Caused the Plan to Pay Excessive Recordkeeping Fees

Plaintiff's recordkeeping fee allegations in Count I fail to support any plausible breach of fiduciary duty. With respect to Plaintiff's "direct" allegations about Defendants' process for negotiating and monitoring recordkeeping fees (a process she admits she knows little about (Compl. ¶ 18)), Plaintiff's allegations are too vague and conclusory to support a well-pleaded claim, and similar allegations attempting to support a fiduciary breach claim have been rejected by binding Seventh Circuit precedent (as well as the holdings of multiple other courts). With respect to Plaintiff's circumstantial allegations that the Plan's recordkeeping fees were "excessive," Plaintiff proffers only flawed fee comparisons that fail to support any inference of imprudence.[5]

#### 1.  *Plaintiff's Direct Allegations of Defendants' Alleged Procedural Imprudence Fail to State a Claim*

Despite countless paragraphs discussing the purported fiduciary standards governing the negotiation and monitoring of recordkeeping fees in general, the Complaint fails to plead sufficient facts to support any viable fiduciary duty claim with respect to the Plan's recordkeeping arrangement with Voya. This is because Plaintiff's allegations regarding Defendants' process for reviewing and monitoring the Plan's recordkeeping arrangement with Voya are either wholly

---

[5] Although Plaintiff's complaint describes a number of different types of recordkeeping fee arrangements, (Compl. ¶¶ 49-59), it is devoid of allegations regarding the specific fee arrangement between the Plan and Voya, much less the prudence of the arrangement.

6

conclusory (and should be disregarded) or premised on a non-existent duty to "regularly solicit competitive bids." Compl. ¶ 89.

As noted above, to state an actionable duty of prudence claim, a plaintiff must set forth non-conclusory allegations of misconduct. *See Leber v. Citigroup 401(k) Plan Inv. Comm. (Leber II)*, 129 F. Supp. 3d 4, 14 (S.D.N.Y. 2015) ("To state a claim for breach of the fiduciary duty of prudence, the plaintiff must allege *non-conclusory* factual content raising a *plausible* inference of misconduct and may not rely on the vantage point of hindsight."). Plaintiff's allegations, which her counsel has largely recycled from the myriad complaints they filed against other plan fiduciaries and sponsors, (*see supra,* at 1 n.1), fall far short of this standard. Without providing *any* factual support whatsoever, Plaintiff simply concludes that, *inter alia*, "Defendants failed to regularly monitor the Plan's [recordkeeping] fees paid to covered service providers," (Compl. ¶ 91), "failed to ensure that the Plan paid no more than a competitive reasonable fee for [recordkeeping] services," (*id.* ¶ 95), and did not engage in "objectively reasonable and/or prudent efforts" to monitor the recordkeeping fees, (*id.* ¶ 97). Other than claiming Defendants did not solicit competitive bids (which itself has no legal teeth), Plaintiff provides no explanation of what Defendants did or did not do in allegedly failing to "regularly monitor" the Plan's fees. Nor does Plaintiff explain how the actions taken (or not taken) were imprudent. Plaintiff's nonspecific claims could be asserted against any person operating a benefit plan and do not plausibly allege a breach of fiduciary duty against Defendants here to warrant discovery. *Dudenhoeffer*, 573 U.S. at 425 (requiring "careful" and "context-specific" scrutiny of allegations in ERISA cases to "weed[] out meritless claims" under ERISA).

With respect to Plaintiff's allegation that "Defendants did not regularly solicit quotes and/or competitive bids from covered service providers," the Seventh Circuit and other courts have

rejected such claims, finding that they fail to plausibly show a fiduciary breach. *See Divane*, 953 F.3d at 990-91 (affirming dismissal of claim that defendants failed to solicit bids from allegedly lower-cost recordkeepers); *Kong v. Trader Joe's Company*, 2020 WL 7062395, at *7 (C.D. Cal. Nov. 30, 2020) (dismissing competitive bidding claim with prejudice); *White v. Chevron Corp.*, 2016 WL 4502808, at *14 (N.D. Cal. Aug. 29, 2016) ("[N]othing in ERISA compels periodic competitive bidding."); *Ferguson v. Ruane Cunniff & Goldfarb, Inc.*, 2019 WL 4466714, at *8 (S.D.N.Y. Sept. 18, 2019) ("Though Plaintiffs' allegation that the . . . Defendants did not seek competitive bids for Plan services is factual, it alone fails to give rise to a *reasonable* inference of imprudence.") (emphasis in original); *Del Castillo v. Cmty. Child Care Council of Santa Clara County, Inc.*, 2019 WL 6841222, at *5 (N.D. Cal. Dec. 16, 2019) ("[The absence of competitive bidding . . . without more, does not support Plaintiffs' allegations that the [defendants] acted imprudently."); *Marks v. Trader Joe's Co.*, 2020 WL 2504333, at *7 (C.D. Cal. Apr. 24, 2020) (same).

As the foregoing cases demonstrate, courts repeatedly have rejected claims that defendants breached their fiduciary duties by failing to "regularly solicit quotes and/or competitive bids from covered service providers." (Compl. ¶¶ 92, 99). These courts have reasoned that ERISA does not compel competitive bidding *at all*, much less at "regular" intervals. *E.g.*, *White*, 2016 WL 4502808, at *14 ("[N]othing in ERISA compels periodic competitive bidding."). And to the extent ERISA obliges plan fiduciaries to "monitor" recordkeeping fees, courts have rejected the assertion Plaintiff makes that the only way to prudently do so is by soliciting competitive bids. *See Troudt v. Oracle Corp.*, 2019 WL 1006019, at *9 n.16 (D. Colo. Mar. 1, 2019) (describing as "myopic" the claim that fiduciaries are required to solicit bids in order to prudently monitor fees). This is particularly true given that the U.S. Department of Labor ("DOL") has taken affirmative steps to

8

relieve plan fiduciaries of the burden of having to periodically "window-shop" just to confirm that the plan's fees remain competitive. *Id.* (explaining that the DOL's 2010 fee disclosure regulations were enacted to "alleviate the need for plans to shop for services at regular intervals simply to ensure that fees were reasonable" (*citing* 75 Fed. Reg. 41,600, 41,619 (July 16, 2010)). And as the Seventh Circuit instructed in *Hecker*, ERISA does not require a plan fiduciary to scour the market in search of the lowest fee.[6] *Hecker*, 556 F.3d at 586. Accordingly, Plaintiff's argument based on an alleged lack of competitive bidding falls flat. *Divane*, 953 F.3d at 990

Plaintiff's claim of imprudence also fails because she does not identify any other recordkeeper that would have agreed to provide the same services the Plan received from Voya for an amount materially less than what the Plan paid. *Divane*, 953 F.3d at 991; *Kong v. Trader Joe's Company*, 2020 WL 5814102, at *6 (C.D. Cal. Sept. 24, 2020) ("Here, Plaintiffs have failed to allege any facts from which one would infer that a competitive bidding service would have benefitted the Plan. Plaintiffs have failed to allege any facts showing that the same service might have been available on the market for less."); *Troudt*, 2019 WL 1006019, at *19 n.16 (D. Colo. Mar. 1, 2019) (requiring proof that less costly alternatives were available); *Marks*, 2020 WL 250433, at *7 ("Plaintiffs' Complaint simply recites legal conclusions, and does not allege any facts suggesting that the Plan fiduciaries could have obtained less-expensive recordkeeping services elsewhere through competitive bidding."). Although Plaintiff alleges that, in 2018, a small number of plans paid lower recordkeeping fees than the Plan, as discussed below, (*see infra*, at 10-14), the fees those plans paid for unspecified services have no bearing on what the Plan's services

---

[6] Plaintiff's citation to *George v. Kraft Foods Global, Inc.*, 641 F.3d 786, 800 (7th Cir. 2011) for the proposition that fiduciaries are required to solicit competitive bids is misguided. The Seventh Circuit held in *George* that there was a triable fact issue where there was objective evidence that the plan's fees were excessive and the defendant had not conducted a competitive bidding process or changed recordkeepers in over fifteen years. *Id.* at 798-99. There are no such allegations in this case.

9

were worth. And, tellingly, Plaintiff does not allege that those other recordkeepers would have provided for a lower price the same level and quality of services that the Plan received from Voya.

Finally, Plaintiff's claim fails because, even if she could identify a competing recordkeeper that would have charged less for the services Voya was providing to the Plan, she would have to show that the alternative pricing was so far below what the Plan was paying that any reasonable fiduciary in Defendants' position would have been compelled to transition the Plan's tens of thousands of participants and billions of dollars in assets to a new recordkeeper. *Divane*, 953 F.3d at 988 (explaining that a plaintiff must show that no hypothetical prudent fiduciary would have made the same choice as the defendant); *Roth v. Sawyer-Cleator Lumber Co.*, 16 F.3d 915, 919 (8th Cir. 1994) ("Even if a trustee failed to conduct an investigation before making a decision, he is insulated from liability if a hypothetical prudent fiduciary would have made the same decision anyway."). Transitioning recordkeepers is a complex undertaking and a substantial administrative feat, particularly for plans as large as the Plan. *See Sacerdote v. New York Univ.*, 328 F. Supp. 3d 273, 295-96 (S.D.N.Y. 2018) (discussing process of changing recordkeepers as "complex and time-consuming"). Plaintiff fails to plead any facts suggesting that the alleged cost saving of changing recordkeepers would have significantly outweighed the time, expense, and disruption to the Plan's participants associated with any such transition.

### 2. Plaintiff's Circumstantial Allegations of "Excessive" and "Unreasonable" Fees Also Fail to State a Claim of Imprudence

Unable to plead a plausible fiduciary breach based on direct procedural imprudence, Plaintiff attempts to rely on circumstantial allegations to argue that the Plan's recordkeeping fees were "excessive" and "unreasonable." But Plaintiff's hollow buzzwords and untenable factual bases still do not state a plausible claim of imprudence.

10

For starters, Plaintiff's allegations regarding the Plan's recordkeeping fees are not substantiated. Plaintiff alleges that the Plan annually paid on average $60 per participant from 2014 to 2018. Compl. ¶ 101. Plaintiff, however, provides no detail regarding how she calculated this figure and simply claims that it is based on "the best publicly available information." *Id.* But in keeping with her distorted complaint, Plaintiff does not identify the information to which she is referring. While she allegedly relies on the comparator plans' annual reports (*i.e.*, Forms 5500) for purposes of calculating the comparator plans' fees, (Compl. ¶ 102), the Plan's Forms 5500 do not support her calculation of the Plan's fees. Ex. 6, 2014-2018 Form 5500 Annual Reports (Excerpts).[7] Given the lack of support for Plaintiff's calculation of the Plan's alleged recordkeeping fees, her claim that the Plan paid $60 per participant is mere guess-work. *Marks*, 2020 WL 2504333, at *6 ("Plaintiffs' guess that the Plan pays $140 per participant for recordkeeping fees has 'no factual basis,' and Plaintiffs admit that they do not actually know how much the recordkeeping fees are."); *White v. Chevron Corp.*, 2017 WL 2352137, at *19 (N.D. Cal. May 31, 2017) (rejecting plaintiffs' allegations regarding the amount paid in fees as "guesses" where they could not be reconciled with publicly-available data, including Form 5500 filings), *aff'd*, 752 F. App'x 453 (9th Cir. 2018).

Plaintiff's methodology for calculating the alleged fees of her handful of comparator plans is similarly suspect. The data provided in Plaintiffs' chart, (Compl. ¶ 102), suggests that she is calculating the plans' per participant recordkeeping fee by simply dividing the amount of "direct compensation" listed in Schedule C of the plans' Forms 5500 by the number of participants.[8] This

---

[7] The Plan's Forms 5500 for each of the years between 2014 and 2018 indicate that Voya received a fraction of the direct compensation Plaintiff claims Voya received from the Plan. *See* Ex. 6, 2014-2018 Form 5500 Annual Reports (Excerpts), at 7, 14, 21, 28, 35.

[8] For example, the participants, assets, and RK&A price for the Sutter Health Retirement Income Plan comes from the plan's 2018 Form 5500. *See, e.g.*, Ex. 2, Sutter Health Plan 2018 Form 5500, at 3, 7, 33.

11

formula, however, often understates the plans' actual recordkeeping fees. For one, in addition to direct compensation, the Sutter Health Form 5500 explicitly states that plan's recordkeeper also receives an undisclosed amount of "indirect compensation" through revenue sharing. *See, e.g.* Ex. 2, Sutter Health Plan 2018 Form 5500, at 7, 33. Plaintiff's omission of these additional disclosed recordkeeping fees undermines her claim that the Plan's fees were "excessive" relative her comparator plans.

Putting aside her dubious calculations, Plaintiff's fee comparisons do not support an inference of imprudence because she fails to allege facts sufficient to establish that her comparators are "meaningful benchmark[s]." *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 822 (8th Cir. 2018). As another district court held just last week in dismissing analogous fiduciary breach claims with prejudice, simply alleging that other plans paid lower fees is insufficient to support an inference of imprudence absent well-pleaded allegations that the defendant could have obtained those same fees for the same services its incumbent recordkeeper provided. *Kong*, 2020 WL 7062395, at *6. Here, Plaintiff's sole basis for alleging that the comparator plans provide a meaningful benchmark is that the plans are allegedly similar in size. Compl. ¶ 102. Plan size, however, is merely one factor that affects recordkeeping costs. Recordkeeping costs also vary based on, *inter alia*, the type and quality of the services provided and the complexity and needs of the plan. *See Ramos v. Banner Health*, 2020 WL 2553705, at *20 (D. Colo. May 20, 2020) ("When selecting a recordkeeper, plans consider services, quality of those services, and price, and must take into account the unique characteristics and needs of the plan."); *Sacerdote*, 328 F. Supp. 3d 273, 299 n.55 (S.D.N.Y. 2018) (discussing that a fiduciary's desire for a "high touch" service model justified higher recordkeeping fees). Without any allegation showing or suggesting that the Plan was materially identical to the comparator plans, Plaintiff's unsupported contention that the Plan should have only paid $28 per

participant in recordkeeping fees is not plausible. *Hecker*, 569 F.3d at 711 (7th Cir. 2009) (denying petition for rehearing and affirming the dismissal of the excessive fee claims because "the complaint is silent about the services . . . participants received"); *Young v. Gen. Motors Inv. Mgmt. Corp.*, 325 F. App'x 31, 33 (2d Cir. 2009) (affirming dismissal where plaintiffs "fail[ed] to allege that the fees were excessive relative to the services rendered"); *Kong*, 2020 WL 7062395, at *6 ("The . . . evidence of the recordkeeping fees of other plans have no connection to the question of whether *this* plan could have obtained lower recordkeeping fees[.]").

Plaintiff also fails to show that her comparator plans are representative of the market. Indeed, according to public and judicially-noticeable reporting by the DOL in 2018 (which is the year Plaintiff relies on for her comparison), there were over 700 defined contribution plans with participant populations and assets under management similar to those identified by Plaintiff.[9] Setting aside Plaintiff's failure to allege how she calculated the Plan's fees or the fees allegedly paid by her comparator plans, the fact that she was able to identify a small number of plans that purportedly paid lower fees from the hundreds of plans of a similar size does not establish that the Plan's fees were out of the ordinary, much less suggestive of imprudence. *Meiners v. Wells Fargo & Co.*, 2017 WL 2303968 (D. Minn. May 25, 2017) (refusing to infer imprudence based on relative cost compared to two purported alternatives where there was no evidence the alternatives were representative of the market as a whole), *aff'd*, 898 F.3d 820 (8th Cir. 2018).

Finally, even if Plaintiff's estimates of the Plan's recordkeeping fees were grounded in fact (and they are not), the fees would still be far below what qualifies as "excessive" to support an

---

[9] For the plans identified by Plaintiff as comparators, the number of participants range from 13,000-83,000 and the amount of assets range from $400,000,000 to $17,000,000,000. The DOL's employee benefits security administration database of 2018 Forms 5500 includes over 700 defined contribution plans with participant counts and asset levels within this range. Ex. 5, EBSA Database Search Results Spreadsheet. *See also* EBSA Form 5500 Database, *available at*, https://5500search.dol.gov/ (allowing user to sort and filter benefit plan Form 5500 filings by, *inter alia*, participant and asset size, type of plan, and plan year).

13

inference of imprudence. In analyzing the reasonableness of recordkeeping fees, the Seventh Circuit and its district courts have held that significantly higher recordkeeping fees paid by plans similar in size to the Plan were reasonable as a matter of law. In *Divane*, for example, the Seventh Circuit held that fees *two to three times higher* than Plaintiff's calculated fees did not support an inference of imprudence. *See Divane*, 953 F.3d at 984 (allegation that the plan annually paid between $153-$213 per participant failed to state a claim). Similarly, in *Martin v. CareerBuilder, LLC*, the Northern District of Illinois held that fees of between $131-$222 per participant were not excessive. *Martin*, 2020 WL 3578022, at *4. If recordkeeping fees ranging from $131-$222 per participant are not enough to support a fiduciary breach claim alleging excessive fees, Plaintiff's allegation that the Plan paid approximately $60 per participant certainly cannot support a claim.

## B. Plaintiff's Claims Regarding the Plan's Managed Account Services Fees Fail Due to a Lack of Standing as well as Plausibility

As shown below, Plaintiff also fails to proffer any direct or circumstantial allegations sufficient to plausibly allege fiduciary imprudence with respect to the Plan's managed account fees.[10] But there is a more fundamental reason that Plaintiff's managed account services claim must be dismissed. Having never enrolled in VRA's managed account services or paid any managed account service fees, Plaintiff did not suffer an individualized injury sufficient to have to standing to assert this claim.

---

[10] This is not the first time that a plaintiff has unsuccessfully challenged the reasonableness of what the Plan paid for VRA's managed account services. Just two years ago, in *Patrico v. Voya Financial, Inc.,* 2018 WL 1319028 (S.D.N.Y. Mar. 13, 2018), the Southern District of New York addressed claims by an individual participant against Voya that were premised on allegations the Plan paid VRA "excessive fees" for managed account services. The Court dismissed the plaintiff's claim with prejudice because she "fail[ed] to plead any facts to suggest that VRA's fees exceeded the prevailing market rate." *Id.* at *7. Although the *Patrico* decision was based on the pleading in that case, the court's reasoning that the complaint allegations failed to support a plausible inference of excessive fees because the plaintiff did not allege facts regarding how the fees compared to market rates is equally applicable here.

14

### 1. **_Plaintiff Lacks Standing to Challenge the Plan's Managed Account Services Fees_**

"Standing is a threshold question in every federal case because if the litigants do not have standing to raise their claims the court is without authority to consider the merits of the action." *Meyers v. Nicolet Rest. Of De Pere, LLC*, 843 F.3d 724, 726 (7th Cir. 2016). To demonstrate standing, Plaintiff must plausibly allege a particularized injury that would be redressed by the requested judicial relief. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016). Merely "conjectural" or "hypothetical" injuries will not do. *Id.* Absent an individualized injury-in-fact, a participant lacks standing to sue, regardless of whether she is asserting claims on behalf of herself, a putative class, or an ERISA plan. *Thole v. U.S. Bank, N.A.*, 140 S. Ct. 1615, 1620, 1622 (2020) ("There is no ERISA exception to Article III"); *see also Payton v. Cty. of Kane*, 308 F.3d 673, 682 (7th Cir. 2002) ("Standing cannot be acquired through the back door of a class action.").

Plaintiff claims that Defendants breached their fiduciary duty of prudence by retaining VRA as the Plan's managed account services provider because allegedly it charged "excessive and unreasonable fees." Compl. ¶ 129. Plaintiff, however, never enrolled in VRA's managed account services and never paid the allegedly "excessive and unreasonable fees" forming the basis for her claim. Ex. 3, Declaration of Christina Wagner, ¶¶ 5-7.[11] Indeed, Plaintiff does not allege otherwise. Compl. ¶ 64 (alleging generally that "Defendants also caused *Plan Participants* to pay excessive managed account services fees") (emphasis added). Because Plaintiff has never paid for managed account services, she would not recover anything on her claim and, therefore, lacks standing to assert it. *See Thole*, 140 S. Ct. at 1622 ("Winning or losing this suit would not change the plaintiffs'

---

[11] When assessing a plaintiff's standing to file suit pursuant to Rule 12(b)(1), a court's review is not limited to pleading allegations and judicially-noticed facts. Rather, the court may consider any evidence submitted on the issue. *Farnik v. F.D.I.C.*, 707 F.3d 717, 721 (7th Cir. 2013) ("To determine whether jurisdiction exists, we look beyond the jurisdictional allegations of the complaint and consider any evidence submitted on the issue.").

monthly pension benefits. [Thus,] the plaintiffs have no concrete stake in this dispute and therefore lack Article III standing.");[12] *see also Daugherty v. Univ. of Chicago*, 2017 WL 4227942, at \*5 (N.D. Ill. Sept. 22, 2017) (plaintiff who did not participate in a loan program offered through his benefit plan did not have standing to challenge that program because of *Spokeo*'s concrete injury requirement); *Marshall v. Northrop Grumman Corp.*, 2017 WL 2930839, at \*9 (C.D. Cal. Jan. 30, 2017) (holding that the plaintiff lacked standing with respect to optional investment funds and services).

### 2. Plaintiff's Managed Account Services Allegations Do Not State a Plausible Claim of Imprudence

In addition to her standing obstacle, Plaintiff's allegations regarding the Plan's managed account services fees fail to support any plausible claim that Defendants breached their duty of prudence. As an initial matter, the Complaint is devoid of non-conclusory, direct allegations about the process Defendants employed to negotiate or monitor VRA's managed account services fees. Plaintiff's only attempt at direct allegations are that, "upon information and belief," Defendants failed to "prudently evaluate" VRA's managed account services, (Compl. ¶ 127), and should have conducted fee comparisons and "taken other [unspecified] measures" to ensure VRA's fees were reasonable. Compl. ¶ 128. Such generic allegations of imprudence are insufficient to state a claim. *See, e.g.*, *Schweitzer v. Invest. Comm. of Phillips 66 Savings Plan*, 312 F. Supp. 3d 608, 622 (S.D. Tex. 2018) (allegation that defendants failed to "follow a regular, appropriate systematic procedure to evaluate" plan investments was insufficient to state a fiduciary breach claim); *Board of Trustees of Operating Eng'rs Pension Trust v. JPMorgan Chase Bank*, 2012 WL 1382274, at \*4 (S.D.N.Y.

---

[12] *Thole*'s holding that plan participants must allege an individualized injury, rather than merely injury to the plan as a whole, is as equally applicable to defined contribution plans as it is to defined benefit plans. *See Ortiz v. American Airlines, Inc.*, 2020 WL 4504385, at \*13 (N.D. Tex. Aug. 5, 2020) (applying *Thole* to find lack of standing in challenge to defined contribution plan).

Apr. 20, 2012) (allegations the defendant "violated its duty to monitor the investments" and "failed to conduct a proper investigation" were too vague and conclusory to support a breach of fiduciary duty claim); *Simi Surgical Center, Inc. v. Conn. Gen. Life Ins. Co.*, 2018 WL 6332285, at *5 (C.D. Cal. Jan. 4, 2018) ("Simply stating that [defendant] 'failed to act with the care, skill, prudence, and diligence that a prudent fiduciary would use' is the very type of conclusory pleading that fails to state a plausible claim.").

Unable to allege any well-pleaded facts regarding Defendants' process for negotiating and monitoring VRA's managed account services fees, Plaintiff again relies on half-baked fee comparisons in an effort to demonstrate that VRA's were "excessive." Specifically, while Plaintiff purports to compare VRA's managed account services fees to the managed account services fees of five comparator plans, (Compl. ¶ 120), her comparisons are as flawed as her recordkeeping fee comparisons.

Plaintiff concedes that she does not know whether her hand-picked comparators are representative of the fees available on the market. Compl. ¶ 120 ("[C]ompanies are not required to publicly disclose fee rates for managed account services making it difficult to obtain marketplace data."). The Complaint is also lacking in any facts regarding, *inter alia*, the companies servicing the comparator plans, the type or scope of the managed accounts services provided (*e.g.*, robo-advisory services or professional management), the comparator plans' investment lineup, the relative investment returns achieved by the different comparator plans, the terms of the comparator plans' service agreements (including whether it is an "opt-in" or "opt-out" arrangement), or the required asset levels distinguishing the different tiers of the respective plan's fee structure. Ultimately, all Plaintiff offers is her conclusory allegation that, "upon information and belief," the comparator plans she selects are "similarly situated" and the managed account services are

17

"virtually and materially identical." Compl. ¶ 120. Self-serving and unsupported allegations like those are insufficient to show that her comparisons are appropriate. *See Davis v. Salesforce.com, Inc.*, 2020 WL 5893405, at *4 (N.D. Cal. Oct. 5, 2020) (rejecting "conclusory" and "threadbare" allegations that comparators had "materially similar characteristics"); *Patterson v. Morgan Stanley*, 2019 WL 4934834, at *12 (S.D.N.Y. Oct. 7, 2019) (same).

Moreover, although Plaintiff pleads ignorance with respect to whether her comparator plans are representative of the market, (Compl. ¶ 120), the publicly-available information cited by Plaintiff plainly establishes the reasonableness of VRA's managed account services fees. In the 2014 U.S. Government Accountability Office ("GAO") report cited in paragraph 64 of Plaintiff's complaint,[13] the GAO reported that the eight (8) largest providers of managed account services, which represented an estimated 95% of the industry, charged fees ranging from 0.08% to 1.00% (8 bps to 100 bps) and that the average fee was 0.45% (45 bps). Ex. 4, GAO Report, at 45-46, 72 n.4. Given this range and average, Plaintiff's comparison of VRA's fees—which she alleges ranged from just 0.25% to 0.50% (25 to 50 bps)—to a handful of comparator plans do not support a plausible inference that Defendants acted imprudently with respect to its negotiation and monitoring of those fees.

Even if Plaintiff's comparator plans were meaningful benchmarks, they would still not support an inference that Defendants acted imprudently because the difference between what the Plan and the comparator plans allegedly paid for managed account services is *de minimis*. Depending on the specific tier and the plan to which VRA's fees are compared, the difference in fees is less than one tenth of one percent (0.010% or 10 bps). Such a small fee differential does not

---

[13] The Court can consider the 2014 GAO report because the Complaint cites and relies on the contents of the report. *See Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

18

establish fiduciary imprudence, particularly where Plaintiff has made no showing that the plans and the services provided are all comparable. As the 2014 GAO report explains, there are myriad factors that affect the cost of managed account services, any one of which could account for the negligible difference in costs. <u>Ex. 4</u>, GAO Report, at 39 ("Fees can vary based on a number of factors, such as certain plan characteristics (*i.e.*, the amount of assets in the plan, the percentage of plan participants enrolled in managed accounts) or the level of a participant's account balance."); *Id.* at 47 ("Fees may vary based on whether or not participants are defaulted into managed accounts by the plan sponsor or choose to opt into the managed account services."). Because Plaintiff's fee comparisons are "not only compatible with, but indeed more likely explained by, lawful [conduct]," they are insufficient to support a claim. *Iqbal*, 556 U.S. at 680.

## II.  PLAINTIFF'S DUTY OF LOYALTY CLAIMS SHOULD BE DISMISSED (COUNTS I AND II)

Plaintiff's effort to plead a breach of the duty of loyalty in Counts I and II fares no better. It is well-established that ERISA's duty of loyalty is separate and distinct from the duty of prudence, and allegations related to the latter cannot be repackaged and repleaded under the guise of the former. *See Martin*, 2020 WL 3578022, at *6 (collecting cases). To state a plausible duty of loyalty claim, a plaintiff must set forth separate and distinct allegations of actual self-dealing or disloyal conduct. *See, e.g.*, *Loomis*, 658 F.3d at 671 (dismissing duty of loyalty claim where complaint failed to allege facts sufficient to support showing that defendant selected investments "to enrich itself at participants' expense"); *Martin*, 2020 WL 3578022, at *6 (same); *Daugherty v. Univ. of Chicago*, 2017 WL 4227942, at *9 (N.D. Ill. Sept. 22, 2017) (same). The Complaint contains no allegations that Defendants engaged in self-dealing or conduct that was intended to benefit anyone other the Plan's participants and beneficiaries. Rather, Plaintiff's duty of loyalty claims merely piggyback on her allegations of imprudence.  Compl. ¶ 156 ("Defendants breached

19

their duty to Plan Participants, including Plaintiff, by failing to employ a prudent and loyal process by failing to critically or objectively evaluate the cost and performance of the Plan's recordkeeper[.]"); *Id.* ¶ 168 ("Defendants breached their duty to Plan Participants, including Plaintiff, by failing to employ a prudent and loyal process by failing to critically or objectively evaluate the cost and performance of the Plan's managed account provider."). As such, they must be dismissed. *See Martin*, 2020 WL 3578022, at *6 (dismissing duty of loyalty claims "because most courts require something more, such as an allegation supporting an inference of self-dealing, to survive a motion to dismiss"); *Sacerdote v. New York Univ.*, 2017 WL 3701482, at *5 (S.D.N.Y. Aug. 25, 2017) ("[A] plaintiff must do more than simply recast purported breaches of the duty of prudence as disloyal acts.").

## III. PLAINTIFF'S DUTY TO MONITOR CLAIMS SHOULD BE DISMISSED (COUNTS III AND IV)

Plaintiff's effort to bolster her case with attendant allegations that "Defendants" breached their fiduciary duties by failing to monitor the fiduciaries responsible "for Plan [recordkeeping] fees," (Compl. ¶ 175), and "managed account service fees," (Compl. ¶ 182), fail for two reasons. First, it is settled law that an ERISA duty to monitor claim is derivative of a fiduciary breach claim. Without an underlying breach by the agent or appointee subject to monitoring, there can be no failure to monitor. *Howell v. Motorola, Inc.*, 633 F.3 552, 572-73 (7th Cir. 2011); *Martin*, 2020 WL 3578022, at *6. As explained above, Plaintiff has failed to plausibly allege any actionable fiduciary breach, and thus, her duty to monitor claim has no wagon upon which to hitch.

Second, even an actionable underlying breach of fiduciary duty does not automatically support a failure to monitor. As the Seventh Circuit has explained, a plaintiff cannot plead a plausible claim based solely on the fact that a plan fiduciary did not prevent an alleged breach by an appointee or co-fiduciary. *Howell*, 633 F.3d at 573 (duty to monitor does not "require every

appointing Board member to review all business decisions of Plan administrators"). Instead, to state a valid monitoring claim, a plaintiff must allege that (i) there was some failure or deficiency with respect to the monitoring process and (ii) the monitoring failure caused actual harm. Vague allegations "only in the most general terms that the [defendants] breached their duty to monitor," as here, are not enough to support a claim. *Nell v. Zell*, 677 F. Supp. 2d 1010, 1024 (N.D. Ill. 2009), *as amended* (Mar. 11, 2010).

Plaintiff pleads her monitoring claims against all "Defendants" without identifying which defendant[s] allegedly had a duty to monitor and which were supposed to be monitored. In addition to this fatal lack of clarity, Plaintiff simply concludes—without providing any factual basis—that "Defendants . . . fail[ed] to monitor and evaluate the performance of [unspecified] individuals" responsible for the Plan's recordkeeping and managed account services fees and allegedly "fail[ed] to monitor the process" by which those fees were evaluated. Compl. ¶¶ 177, 184. Such conclusions are insufficient to show a faulty monitoring process. *White*, 2016 WL 4502808, at *19 (a plaintiff must allege "*facts* showing how the monitoring *process* was deficient") (emphasis added). Nor do Plaintiff's allegations show the necessary harm, as she pleads no facts plausibly suggesting that the Plan would have paid lower recordkeeping or managed account services fees but for a lack of monitoring. In the absence of plausible harm, there can be no actionable fiduciary breach. *Kannapien*, 507 F.3d at 639.

This ubiquitous claim, which remarkably appears in nearly all ERISA fiduciary breach cases brought by Plaintiff's counsel, *see supra*, at 1 n.1, requires more than baseless reproduction and rank speculation. When fiduciaries breach one of ERISA's prescribed tenets they should be held accountable. But when a plaintiff can argue nothing more than "it must be so," that does not suffice to place fault where none exists.

## IV.  PLAINTIFF'S PROHIBITED TRANSACTION CLAIM SHOULD BE DISMISSED (COUNT V)

Finally, Plaintiff claims that, by allowing the Plan to reimburse Nestlé for certain services provided to the Plan, Defendants engaged in prohibited transactions in violation of ERISA §§ 406(a)(1) and 406(b)(1) (29 U.S.C. §§ 1106(a)(1) and 1106(b)(1)). Section 406(a)(1) addresses circumstances where a plan fiduciary causes a plan to enter into a prohibited transaction that the fiduciary knew or should have known to be between the plan and a "party in interest." 29 U.S.C. § 1106(a)(1). Section 406(b)(1) addresses circumstances in which a fiduciary causes the plan to use plan assets for the fiduciary's own interests. 29 U.S.C. § 1106(b)(1).

The fatal flaw with Plaintiff's self-dealing claim under Section 406(b)(1) is that she fails to plausibly plead that the fiduciary allegedly *receiving* plan assets was also the fiduciary responsible for *approving* such payments. Plaintiff's mere conclusion that "Nestlé paid itself purportedly for providing some sort of administrative service" (Compl. ¶ 132), does not plausibly show that Nestlé acting as a fiduciary made the decision to reimburse itself from Plan assets, as opposed to others to whom plan administration may have been delegated. Nor does Plaintiff's allegation show that in receiving reimbursement, Nestlé was acting as a fiduciary. Indeed, as Nestlé serves as Plan sponsor and the employer of individuals servicing the Plan, it is quite reasonable to infer that, in fact, any reimbursements Nestlé received were in its capacity as Plan sponsor. *Pegram v. Herdrich*, 530 U.S. 211, 225 (2000).

Plaintiff's allegations also fail to plausibly allege that Nestlé received improper reimbursements. While Plaintiff surmises that such payments were "purportedly for providing some sort of administrative service," (Compl. ¶ 132), Plaintiff's speculation does not make it so. It is just as plausible that Nestlé was reimbursed from the Plan for payments Nestlé advanced on behalf of the Plan to pay other service providers. See *Cohen*, 735 F.3d at 612 (allegations fail to

state a claim when "they are not only compatible with, but indeed are more likely explained by, lawful conduct").

Plaintiff also undermines her claim that Nestlé engaged in self-dealing by alleging that Nestlé provided "standard" services to the Plan that could have been provided by Voya. Compl. ¶ 134. Plaintiff does not challenge the services provided; in fact, she does not even identify them. But her contention that the unspecified services could have been provided by the Plan's recordkeeper reasonably implies that the services for which Nestlé was allegedly reimbursed were appropriate. In fact, the DOL has expressly authorized plan sponsors like Nestlé to obtain "reimbursement of direct expenses properly and actually incurred in the performance of such services." 29 C.F.R. § 2550.408b-2(e)(3).

ERISA does not dictate from whom a plan must obtain the services necessary for its operation. And, notably, ERISA expressly contemplates that employees of a plan sponsor will service the plan. *See* 29 U.S.C. § 1002(16)(A)(ii). While Plaintiff may disagree with how Nestlé chose to manage the Plan and allocate responsibility, that does not suffice to plead unlawful behavior. *See Divane*, 953 F.3d at 989 (refusing to allow participants to co-opt ERISA to enforce their preferences on plan administration). Without plausibly alleging facts that Nestlé profited at the expense of participants through the use of Plan assets, Plaintiff cannot sustain this claim, particularly one premised on information and belief. *See In re Northrop Grumman Corp. ERISA Litig.*, 2010 WL 11469724, at *19 (C.D. Cal. Aug. 12, 2010) (mere fact employer received reimbursements from plan did not suffice to establish self-dealing in violation of Section 406(b)).[14]

---

[14] Equally as unfounded is Plaintiff's suggestion that an independent fiduciary had to approve any payment arrangement between Nestlé and the Plan. Plaintiff cites no authority for this conclusion, nor are Defendants aware of any.

Plaintiff's alternative theory that Defendants engaged in "party-in-interest" transactions in violation of Section 406(a)(1) is equally threadbare. For one, Plaintiff does not identify any actual *transactions* between the Plan and Nestlé. Rather, she merely alleges that Nestlé received assets from a trust *in which the Plan participates*. Compl. ¶ 132. But those payments could represent hundreds of transactions involving Plans other than this one, none of which Plaintiff attempts to address.

With respect to *why* Nestlé received compensation, all Plaintiff alleges is that Nestlé "purportedly" provided "some sort" of service to the Plan, which she maintains "[u]pon information and belief" "did not provide any value to the Plan." Compl. ¶ 133. But given that Plaintiff has already indicated that she does not know what services were provided, she hardly can plausibly allege that the services were of no value. Compl. ¶ 132; *see also Sweda v. Univ. of Pennsylvania*, 923 F.3d 320, 339-40 (3d Cir. 2019). Plaintiff's allegations are nothing more than an "unadorned, the-defendant-unlawfully-harmed-me accusation" that fails to satisfy the basic requirements of Rule 8, let alone support a plausible prohibited transaction claim. *Iqbal*, 556 U.S. at 678.

## V.    PLAINTIFF'S CLAIMS AGAINST THE BOARD OF DIRECTORS SHOULD BE DISMISSED IN THEIR ENTIRETY (COUNTS I-V)

Plaintiff's Complaint should be dismissed in its entirety for all of the above reasons. At a minimum, however, Plaintiff's claims against the Board should be dismissed for the further reason that Plaintiff fails to plausibly allege that the Board had fiduciary responsibility for the misconduct alleged.[15]

---

[15] The John and Jane Doe defendants have not been identified or served, and therefore, are not parties to the case. However, Defendants' arguments with respect to Plaintiff's failure to plead facts supporting the fiduciary status of the Board are equally applicable to these unidentified individuals. *See Alki Partners, L.P. v. Vatas Holding GMBH*, 769 F. Supp. 2d 478, 499 (S.D.N.Y. 2011) (dismissing, *sua sponte*, claims against

To state a breach of fiduciary duty claim, a plaintiff must plead facts sufficient to support a finding that a defendant was acting as a fiduciary with respect to the conduct alleged. *Pegram*, 530 U.S. at 226 ("In every case charging breach of ERISA fiduciary duty, . . . the threshold question is . . . whether [the defendant] was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint."). Fiduciary status is not an all or nothing concept. Rather, it turns on whether the conduct at issue consists of a fiduciary act. *Klosterman v. Western Gen. Mgmt., Inc.*, 32 F.3d 1119, 1122 (7th Cir. 1994). Here, Plaintiff pleads *zero* facts regarding any fiduciary action taken by the Board. Instead, she simply concludes that (i) the Board and its members "are ERISA fiduciaries as they exercise discretionary authority or discretionary control over the [Plan]" and (ii) "Nestlé acted through its officers, including the Board Defendants, and their members . . . , to perform Plan-related fiduciary functions in the course and scope of their business." Compl. ¶¶ 3, 21. Such conclusory allegations "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Plaintiff has not pled any facts which even suggest, let alone plausibly establish, that the Board exercised fiduciary responsibility for the recordkeeping fees and managed account services fees, or the alleged payments to Nestle, at the core of Plaintiff's claims. In fact, Plaintiff's allegations demonstrate show that she does not know which Board members, if any, were responsible for the alleged misconduct. Compl. ¶ 3. Without plausibly showing that the Board was responsible for the misconduct alleged, Plaintiff cannot state a fiduciary breach claim against it. *See Alas v. AT&T Inc.*, 2019 WL 1744847, at *4 (C.D. Cal. Feb. 25, 2019) (dismissing individual defendants where the complaint did not "allege any facts demonstrating any plausible

---

a non-appearing, non-moving defendant where motions by other defendants put the plaintiff on notice of the ground for dismissal), *aff'd sub nom Alki Partners, L.P. v. Windhorst*, 472 F. Appx. 7 (2d Cir. 2012).

liability for individual defendants, as it must in order to bring an ERISA claim against a fiduciary in their individual capacity"). Plaintiff's bare claims against the Board should be dismissed.

## CONCLUSION

For the above reasons, this Court should dismiss Plaintiff's Complaint with prejudice.

Dated: December 8, 2020

Respectfully submitted,

*/s/ Nancy G. Ross*
Nancy G. Ross
Richard E. Nowak
Samuel P. Myler
Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606
(312) 782-0600
nross@mayerbrown.com
rnowak@mayerbrown.com
smyler@mayerbrown.com

*Attorneys for Defendants*

26

## CERTIFICATE OF SERVICE

I hereby certify that on December 8, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to all counsel of record.

/s/ Nancy G. Ross
Nancy G. Ross