UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**LORIE M. GUYES,**
  *individually, and as representative of a class of
  participants and beneficiaries of the Nestle 401(k)
  Savings Plan,*

    Plaintiff,

    v.                                                          Case No. 20-CV-1560-WCG-SCD

**NESTLE USA, INC.,
BOARD OF DIRECTORS OF NESTLE USA, INC.,**
and
**JOHN AND JANE DOES 1-30,**

    Defendants.

---

## REPORT AND RECOMMENDATION

---

    Lorie M. Guyes, a participant in the Nestle 401(k) Savings Plan, has filed a proposed class action under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1101–1461, against Nestle USA, Inc., the Board of Directors of Nestle USA, Inc., and John and Jane Does 1–30. United States District Judge William C. Griesbach has referred the case to me to address any motions. Currently pending are the defendants' motion to dismiss the complaint and Guyes' motion for leave to file an amended complaint. For the reasons that follow, I will recommend the court grant the defendants' motion to dismiss and grant in part the plaintiff's motion for leave to file an amended complaint.

## BACKGROUND

    Nestle USA, Inc., offers its employees retirement benefits via the Nestle 401(k) Savings Plan. *See* ECF No. 1 ¶ 3. Nestle is the plan sponsor and plan administrator. *Id.* ¶ 22. The plan

is a "defined contribution" pension plan under 29 U.S.C. § 1102(2)(A) and 1002(34), meaning that Nestle's contribution to the payment of plan costs is guaranteed but the pension benefits are not. *Id.* ¶ 26. Nestle selected Voya Institutional Plan Services (Voya) as the plan's recordkeeper, *id.* ¶ 83, and Voya Retirement Advisors, LLC, (Voya Retirement) as the plan's managed account service provider, *id.* ¶ 116. As of October 2020, the plan had over $4.2 billion in assets and nearly 40,000 participants. *Id.* ¶ 69.

Guyes worked as a general laborer for Nestle from April 2008 to April 2020 and is a participant in the plan. *Id.* ¶¶ 11–13. In October 2020, Guyes filed suit against Nestle, its board of directors, and unnamed members individually and as representative of a putative class of plan participants and beneficiaries. *See* ECF No. 1. Guyes alleges that the defendants, as fiduciaries of the plan, breached the duties they owed to the plan, to Guyes, and to the other plan participants by (1) authorizing the plan to pay unreasonably high fees for recordkeeping and administration; (2) authorizing the plan to pay unreasonably high fees for managed account services; and (3) engaging in self-dealing with regard to administration of the plan. *Id.* ¶ 4. Guyes brings six causes of action against the defendants. *See id.* ¶¶ 149–93. Counts I and II assert that the defendants breached their duties of loyalty and prudence regarding recordkeeping and administration fees and managed account service fees, respectively. Counts III and IV assert that the defendants failed to adequately monitor other fiduciaries with respect to the plan's recordkeeping fees and service fees, respectively. And Count V asserts that the defendants engaged in prohibited transactions.

The clerk of court assigned the matter to United States District Judge William C. Griesbach. On December 8, 2020, the defendants moved to dismiss the complaint under Rule 12(b)(1) for lack of standing and under Rule 12(b)(6) for failure to state a claim upon which

2

relief can be granted. *See* ECF No. 13. The defendants argue that Guyes lacks standing to assert her managed account service fee claim and that each of Guyes' claims fail according to the pleading standards outlined in *Divane v. Northwestern University*, 953 F.3d 980 (7th Cir. 2020), *Hecker v. Deere & Co.*, 556 F.3d 575 (7th Cir. 2009), and *Loomis v. Exelon Corp.*, 658 F.3d 667 (7th Cir. 2011).

After the parties filed their briefs, *see* ECF Nos. 14, 15, 19, this court issued a decision in *Albert v. Oshkosh Corp.*, No. 20-C-901, 2021 WL 3932029, 2021 U.S. Dist. LEXIS 166750 (E.D. Wis. Sept. 2, 2021), dismissing similar ERISA claims. A few weeks later, the court stayed this action because the Supreme Court granted certiorari in *Divane*. *See* ECF No. 21. In January 2022, the Supreme Court vacated *Divane* and remanded the matter to the Seventh Circuit for reconsideration. *See Hughes v. Northwestern Univ.*, 142 S. Ct. 737 (2022).[1] This court then lifted the stay and invited supplemental briefing on the impact of the *Hughes* decision. *See* ECF No. 23.

After the parties submitted their supplemental briefs, *see* ECF Nos. 25, 26, but before this court decided the motion to dismiss, the Seventh Circuit affirmed this court's dismissal in *Albert*, *see Albert v. Oshkosh Corp.*, 47 F.4th 570 (7th Cir. 2022). Guyes promptly filed an expedited non-dispositive motion under Civil Local Rule 7(h) for leave to file an amended complaint, *see* ECF No. 32, which the defendants oppose, *see* ECF No. 33. Judge Griesbach subsequently referred the matter to me in accordance with 28 U.S.C. § 636(b)(1) to issue a report and recommendation concerning any motions that are filed. *See* ECF No. 34.

---

[1] *Divane* is still pending before the Seventh Circuit on remand, with oral argument scheduled for late November.

3

## LEGAL STANDARDS

According to Rule 8(a)(1), "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the grounds for the court's jurisdiction." Fed. R. Civ. P. 8(a)(1). A motion to dismiss for lack of standing under Rule 12(b)(1) "challenges the jurisdiction of this court of the subject matter related in the complaint." *Coal. to Save the Menominee River Inc. v. United States EPA*, 423 F. Supp. 3d 560, 565 (E.D. Wis. 2019) (citing Fed. R. Civ. P. 12(b)(1)). "To survive a Rule 12(b)(1) motion, the plaintiff must establish that the jurisdictional requirements have been met." *Coal. to Save the Menominee River*, 423 F. Supp. 3d at 565 (citing *Schaefer v. Transp. Media, Inc.*, 859 F.2d 1251, 1253 (7th Cir. 1988)). "When considering a factual challenge to jurisdiction," like the one here, "courts 'may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'" *Albert*, 47 F.4th at 577 (quoting *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009)).

According to Rule 8(a)(2), "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss under Rule 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "To survive a motion to dismiss, a complaint must 'state a claim to relief that is plausible on its face.'" *Zemeckis v. Global Credit & Collection Corp.*, 679 F.3d 632, 634–35 (7th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim satisfies this pleading standard when its factual allegations 'raise a right to relief above the speculative level.'" *Zemeckis*, 679 F.3d at 635 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). When analyzing a motion to dismiss pursuant to Rule

4

12(b)(6), courts must "accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff." *Johnson v. Enhanced Recovery Co.*, 961 F.3d 975, 980 (7th Cir. 2020) (citing *Heredia v. Capital Mgmt. Servs., L.P.*, 942 F.3d 811, 814 (7th Cir. 2019)).

"In putative ERISA class actions, Rule 12(b)(6) motions are an 'important mechanism for weeding out meritless claims.'" *Albert*, 47 F.4th at 577 (quoting *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014)). "Courts apply a 'careful, context-sensitive scrutiny of a complaint's allegations' to 'divide the plausible sheep from the meritless goats.'" *Id.* "Because 'the circumstances facing an ERISA fiduciary will implicate difficult tradeoffs, [] courts must give due regard to the range of reasonable judgments a fiduciary may make based on her experience and expertise.'" *Albert*, 47 F.4th at 577 (quoting *Hughes*, 142 S. Ct. at 742). As such, the Seventh Circuit has held that, "[w]hen claiming an ERISA violation, the plaintiff must plausibly allege action that was objectively unreasonable." *Divane*, 953 F.3d at 988 (citation omitted).

## DISCUSSION

Guyes asserts that the defendants breached their duties of loyalty and prudence, failed to adequately monitor other fiduciaries, and engaged in prohibited transactions. The defendants seek dismissal of all claims asserted in the complaint.[2] Guyes contends that she has plausibly alleged under established precedent that the defendants failed to undertake a reasonably prudent process when managing the plan and that the defendants engaged in

---

[2] The defendants also seek dismissal of the Board as a defendant. However, the complaint sufficiently alleges that the Board was a fiduciary and that Nestle acted through its officers, including the Board, to perform plan-related fiduciary functions. *See* ECF No. 1 ¶¶ 3, 21.

5

prohibited self-dealing. Alternatively, Guyes seeks leave to amend her complaint in light of the Seventh Circuit's recent decision in *Albert*.

I.   **Breach of Fiduciary Duties**

Guyes alleges that the defendants breached their fiduciary duties of prudence and loyalty. "In order to state a claim for breach of fiduciary duty under ERISA, the plaintiff must plead '(1) that the defendant is a plan fiduciary; (2) that the defendant breached its fiduciary duty; and (3) that the breach resulted in harm to the plaintiff.'" *Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 678 (7th Cir. 2016) (quoting *Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 464 (7th Cir. 2010)). "ERISA imposes duties of loyalty and prudence on a plan fiduciary." *Allen*, 835 F.3d at 678 (citing 29 U.S.C. § 1104(a)(1)(A)–(B)). "Loyalty requires a fiduciary to act 'for the exclusive purpose' of providing benefits to participants." *Allen*, 835 F.3d at 678 (quoting § 1104(a)(1)(A)). "Prudence requires the fiduciary to act 'with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent [person] acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.'" *Allen*, 835 F.3d at 678 (quoting § 1104(a)(1)(B)). "This includes choosing wise investments and monitoring investments to remove imprudent ones." *Allen*, 835 F.3d at 678 (citing *Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1828–29 (2015)).

A.   **Duty of prudence claims**

Guyes asserts that the defendants breached their duty of prudence with respect to recordkeeping and administration fees and managed account service fees.

1.   **Recordkeeping and administration fees (Count I)**

Guyes' first duty of prudence claim alleges that the plan paid excessive recordkeeping fees. *See* ECF No. 1 ¶¶ 89–115, 149–60. Specifically, she asserts that the defendants failed to

6

regularly monitor the recordkeeping fees paid to covered services providers, including Voya, and failed to regularly solicit quotes and/or competitive bids from covered service providers. *Id.* ¶¶ 91, 93. For support, Guyes compares publicly available data for the plan with thirteen other plans that are supposedly prudent when it comes to recordkeeping fees. *See id.* ¶ 102. The number of participants in the comparator plans range from 13,248 to 82,788 (recall that the Nestle plan had about 40,000 participants), and the total assets of the comparator plans range from $400 million to $17 billion (compared to $4 billion for the Nestle plan). Between 2014 and 2018, the comparator plans paid an average annual recordkeeping fee of $20 to $35 per plan participant. *Id.* ¶¶ 102–03. By contrast, during the same period, the Nestle plan paid an average annual recordkeeping fee of $60 per participant. *See id.* ¶¶ 101–04. Based on this data, Guyes alleges that "a hypothetical prudent plan Fiduciary would have paid on average an effective annual [recordkeeping] fee of around $28 per participant, if not lower." *Id.* ¶ 105.

In *Albert*, the Seventh Circuit affirmed the dismissal of a substantially similar recordkeeping claim. The court held that the recordkeeping claim failed "under [the] precedent that *Hughes* left untouched"—namely, that a failure to regularly solicit quotes or competitive bids from service providers does not, as a matter of law, breach the duty of prudence. *Albert*, 47 F.4th at 579–80 (citing *Divane*, 953 F.3d at 990–91). The court relied primarily on *Smith v. CommonSpirit Health*, 37 F.4th 1160 (6th Cir. 2022), a recent case in which the Sixth Circuit "held that an ERISA plaintiff failed to state a duty of prudence claim where the complaint 'failed to allege that the [recordkeeping] fees were excessive relative to the services rendered.'" *Albert*, 47 F.4th at 580 (quoting *Smith*, 37 F.4th at 1169). The Seventh Circuit further held that the complaint in *Albert* did not provide "'the kind of context that

7

could move this claim from possibility to plausibility' under *Twombly* and *Iqbal*." *Albert*, 47 F.4th at 580 (quoting *Smith*, 37 F.4th at 1169).

Like the complaint in *Albert*, the complaint in this case does not provide the necessary context to support a plausible recordkeeping claim. *Compare* the complaint here, ECF No. 1 ¶¶ 89–115, *with* the amended complaint in *Albert*, 20cv901, ECF No. 20 ¶¶ 88–114. The complaint alleges in conclusory fashion that the recordkeeping fees were excessive relative to the recordkeeping services received. *See* ECF No. 1 ¶¶ 70, 114. The complaint describes some of the services offered by recordkeepers—maintaining plan records, tracking participant account balances and investment elections, transaction processing, call center support, participant communications, and trust and custody services—and alleges that the defendants "received a standard package of [recordkeeping] services." *Id.* ¶ 37. Crucially, however, the complaint does not contain any allegations concerning the *specific services* performed by the comparator plans' recordkeepers or any allegations supporting a plausible inference that the plan paid more for equivalent services, *see id.* ¶¶ 37–61, 72–115. *See Smith*, 37 F.4th at 1169 (affirming the dismissal of a recordkeeping claim because the plaintiff failed to plead "that the services that [the plan's] fee covers are equivalent to those provided by the plans comprising the average in the industry publication that she cites"). Absent that context, the court is left with only a naked fee-to-fee comparison, which does not permit a reasonable inference that the defendants' process of managing the plan's recordkeeping fees was imprudent. Guyes therefore has failed to plausibly plead a duty of prudence claim based on the allegedly excessive recordkeeping fees the plan paid.

### 2. Managed account service fees (Count II)

Next, Guyes asserts that the defendants breached their duty of prudence by paying unreasonably high fees to Voya Retirement for managed account services. *See* ECF No. 1 ¶¶ 116–30, 161–72. "A managed account is an investment service under which a participant pays a fee to have a managed account provider invest her account in a portfolio of preselected investment options." *Id.* ¶ 64. "Participants who sign up for managed account services are generally charged an annual fee that is a percentage of the participant's account balance. Typically, though not always, pricing is tiered. For example, the first $50,000 of assets may be charged a certain fee level, the next $150,000 in assets at a lower level, and all remaining assets at a still-lower level." *Id.* ¶ 65.

Guyes alleges, upon information and belief, that the plan paid objectively unreasonable fees for a managed account service called the Professional Management service. *Id.* ¶ 117. For support, Guyes compares the fee rates the Nestle plan paid for that service to the fee rates paid by five "similarly situated plans for virtually and materially identical managed account services":

| Managed Account service fee rates of similarly situated plans | Fee on 1st Tier | Fee on 2d Tier | Fee on 3d Tier |
|---|---|---|---|
| Nestle "Professional Management" service | 0.50% | 0.40% | 0.25% |
| AGFA Healtkcare Corp. Employee Savings Plan (2018) | 0.40% | 0.30% | 0.20% |
| Caterpillar Sponsored 401(k) Plans (2016) | 0.40% | 0.30% | 0.20% |
| Citi Ret. Savings Plan (2015) | 0.35% | 0.30% | 0.25% |
| JC Penney 401(k) Savings Plan (2015) | 0.35% | 0.25% | 0.10% |
| Comcast Corp. Ret. Investment Plan (2019) | 0.00% | 0.30% | 0.20% |

*Id.* ¶ 120. The chart shows that, "in all cases except for one, the participants in the Plan are paying fee rates greater than participants in similarly situated plans." *Id.* Guyes further alleges that "there are a number of other managed account providers whose services are virtually

9

identical to the services provided to Plan participants through the 'Professional Management' service and whose fees range from 0.25% to 0.30% on all assets." *Id.* ¶ 123. The complaint provides three examples—Betterment, Vanguard, and Charles Schwarb—each of which, according to Guyes, is much smaller than the Nestle plan. *Id.*

The defendants argue that Guyes lacks standing with respect to her managed account services claim because she never enrolled in or paid any fees related to Voya Retirement's managed account services. "Article III limits federal courts' jurisdiction to 'cases' and 'controversies.'" *Albert*, 47 F.4th at 577 (quoting U.S. Const. art. III, § 2). "The 'irreducible constitutional minimum' of standing requires that the plaintiff has '(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Albert*, 47 F.4th at 577 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). "In *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 210 L. Ed. 2d 568 (2021), the Supreme Court reiterated that 'standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek.'" *Albert*, 47 F.4th at 577 (quoting *Ramirez*, 141 S. Ct. at 2208).

The Seventh Circuit recently addressed ERISA standing in *Albert*. The court noted that there was "no serious dispute" that the plaintiff had standing with respect to his claims alleging excessive recordkeeping fees, excessive investment-advisor fees, breach of the duty of loyalty, failure to monitor, prohibited transactions, and breach of the duty to disclose, which the court said "seemingly affect[ed] all participants in the Plan." *Albert*, 47 F.4th at 577–78 (citing *Boley v. Universal Health Servs., Inc.*, 36 F.4th 124, 131–33 (3d Cir. 2022)). However, the court agreed that the plaintiff's excessive investment-management fee claim was "more complicated because each investment option charge[d] a different expense ratio." *Albert*, 47

10

F.4th at 578. The court explained, "If [the plaintiff] did not personally invest in a fund with an imprudent expense ratio, then it is difficult to see how he suffered an injury in fact. Similarly, if [the plaintiff] invested solely in passively managed index funds, then excessive fees for the Plan's actively managed funds would not harm him." *Id.* Ultimately, the court found that the plaintiff had standing to bring his investment-management fee claim because an uncontested declaration from a benefits analyst for the plan made clear that the plaintiff invested in at least some actively managed funds. *See id.*

Given the dicta in *Albert*, I am not satisfied that Guyes was injured by the plan's allegedly excessive managed account service fees. An uncontested declaration from the plan's project manager makes clear that Guyes has never enrolled in the managed account services offered by Voya Retirement to the plan's participants. *See* ECF No. 14-3 ¶¶ 5–7. Because Guyes has never been charged any fees related to those services, she cannot claim to be injured by the defendants' authorization of those fees, no matter how high they are. Guyes argues that she was injured by the plan's allegedly excessive managed account service fees because the complaint alleges that "she paid too much in fees because of Nestle's fiduciary breach in setting up the overall fee structure with Nestle, the managed account service fees just being one aspect." ECF No. 15 at 11–12 (citing ECF No. 1 ¶ 70). In other words, Guyes maintains that she has standing when considering the plan's fees "holistically." ECF No. 15 at 11. That approach, however, appears to have been rejected by the Supreme Court, which recently said that "plaintiffs must demonstrate standing for each claim that they press." *Ramirez*, 141 S. Ct. at 2208. Guyes has pressed separate claims related to the plan's recordkeeping fees and managed account service fees. Because the undisputed facts show that she has not suffered an

injury in fact from the plan's allegedly excessive managed account service fees, she lacks standing to pursue that claim on behalf of herself or anyone else.

### B. Duty of loyalty claims

Counts I and II also purport to encompass breaches of the duty of loyalty. "To recap, the duty of loyalty requires a plan fiduciary to 'discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries,' with 'the exclusive purpose' of 'providing benefits to participants and their beneficiaries' and 'defraying reasonable expenses of administering the plan.'" *Albert*, 47 F.4th at 582 (quoting § 1104(a)(1)(A)). Other courts have recognized that, to state a duty of loyalty claim, an ERISA plaintiff must do more than recast allegations of purported breaches of the duty of prudence as disloyal acts. "[M]ost courts require something more, such as an allegation supporting an inference of self-dealing, to survive a motion to dismiss." *Martin v. CareerBuilder, LLC,* No. 19-cv-6463, 2020 WL 3578022, 2020 U.S. Dist. LEXIS 115002, at *17 (N.D. Ill. July 1, 2020).

The complaint here does not contain any allegations beyond those pertaining to alleged breaches of the duty of prudence to support its duty of loyalty claims. To be sure, the complaint alleges as a separate cause of action that Nestle engaged in self-dealing by paying itself for administrative services. The duty of loyalty claims, however, do not rely on any of those allegations. Rather, Guyes asserts in Counts I and II that the defendants breached the duty of loyalty with respect to their authorization of allegedly excessive recordkeeping fees and managed account service fees. *See* ECF No. 1 ¶¶ 149–72. Because an ERISA plaintiff may not simply repackage a duty of prudence claim as a duty of loyalty claim, Guyes' loyalty claims do not survive the defendants' motion to dismiss.

## II. Duty to Monitor Claims

In Counts III and IV, Guyes asserts that the defendants breached their duty to monitor other fiduciaries with respect to recordkeeping and administration fees and managed account service fees, respectively. *See* ECF No. 1 ¶¶ 173–86. Guyes does not dispute that her duty to monitor claims rise or fall with her duty of prudence claims. *See* ECF No. 15 at 29–30. Because Guyes has failed to plausibly plead a duty of prudence claim, her duty to monitor claims fail as well. *See Albert*, 47 F.4th at 583 (citing *Rogers v. Baxter Int'l Inc.*, 710 F. Supp. 2d 722, 740 (N.D. Ill. 2010)).

## III. Prohibited Transactions

In Count V, Guyes asserts that Nestle engaged in prohibited transactions by paying itself for providing unspecified administrative services to the plan. *See* ECF No. 1 ¶¶ 131–36, 187–93. Guyes alleges that the services provided to the plan by Nestle did not provide any value to the plan, were not provided for the exclusive benefit of the participants, and did not warrant the payment of the fees to Nestle. *Id.* ¶ 133. Guyes further alleges that the services are standard services that can be provided by Voya, the plan's recordkeeper. *Id.* ¶ 134. From 2014 to 2018, a trust paid Nestle over $2.5 million out of plan assets for those services:

**Nestle 401(k) Savings Plan proportion of Nestle In The USA Savings Trust Schedule C - Commissions and Fees** (services other than Investment Management)

| Provider | Relationship | 2014 | 2015 | 2016 | 2017 | 2018 | Total |
|---|---|---|---|---|---|---|---|
| **NESTLE USA** | EMPLOYER | $507,842 | $599,187 | $266,913 | $562,615 | $635,053 | **$2,571,610** |

*Id.* ¶ 132.

Guyes asserts that the payments amounted to prohibited transactions under 29 U.S.C. § 1106 in two ways. First, Guyes claims that Nestle engaged in self-dealing in violation of 29 U.S.C. § 1106(b)(1). Section 1106(b)(1) prohibits a fiduciary of a plan from "deal[ing] with the assets of the plan in his own interest or for his own account." The defendants argue that

13

Guyes' self-dealing theory fails because: (1) the complaint doesn't plausibly allege that the fiduciary allegedly receiving the plan assets was also the fiduciary responsible for approving the payments; (2) the complaint doesn't plausibly allege that Nestle was acting as a fiduciary at the time; and (3) the complaint doesn't plausibly allege that Nestle received improper reimbursements.

Guyes has not plausibly pled a self-dealing prohibited transaction claim. The complaint alleges that Nestle is a fiduciary as that term is defined in ERISA. The complaint also alleges that Nestle paid itself out of plan assets for administrative services. However, the complaint does not contain any allegations plausibly suggesting that Nestle was acting in its capacity as a fiduciary both at the time it allegedly authorized the payments and when it allegedly received the payments. *See Chi. Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*, 474 F.3d 463, 471–72 (7th Cir. 2007) ("To make out a claim for breach of fiduciary duty under ERISA, [the plaintiff] must show . . . that Caremark was acting in its capacity as a fiduciary at the time it took the actions that are the subject of the complaint."). Indeed, Guyes concedes that she doesn't even know what the payments were for. She speculates they were for "some sort of administrative service to the Plan," but the public filings relied upon for that allegation indicate merely that Nestle received the payments for "Commissions and Fees." ECF No. 1 ¶ 132. Moreover, the complaint's allegation that the services could have been provided by the plan's recordkeeper suggests that Nestle received those payments not as a fiduciary but for its role as the plan sponsor. Such conduct does not constitute self-dealing under § 1106(b)(1). *See, e.g.*, *Danza v. Fid. Mgmt. Tr. Co.*, 533 F. App'x 120, 126 (3rd Cir. 2013) ("Section 406(b)'s purpose is to prohibit transactions that might involve self-dealing by a fiduciary, not to prevent fiduciaries from being paid for their work.").

14

Guyes' second theory is that Nestle engaged in a prohibited party-in-interest transaction in violation of 29 U.S.C. § 1106(a)(1)(C)–(D). Section 1106(a)(1)(C) prohibits a fiduciary with respect to a plan from "caus[ing] the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect . . . furnishing of goods, services or facilities between the plan and a party in interest." Section 1106(a)(1)(D) prohibits a fiduciary from "caus[ing] the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect . . . transfer to, or use by or for the benefit of a party in interest, of any assets of the plan." "A plan fiduciary is a party in interest, as are officers, directors, and major shareholders of a plan sponsor." *Fish v. Greatbanc Tr. Co.*, 749 F.3d 671, 680 (7th Cir. 2014) (citing 29 U.S.C. § 1002(14)(A) & (H)). The defendants argue that Guyes' party-in-interest theory fails because the complaint does not allege any actual transactions between the plan and Nestle and because the complaint does not sufficiently allege what the payments were for.

Guyes has not plausibly pled a party-in-interest prohibited transaction claim. "The first element of such a claim is that there must be a 'transaction.'" *Tibble v. Edison Int'l*, 639 F. Supp. 2d 1122, 1125 (C.D. Cal. 2009) (citing *Lockheed Corp. v. Spink*, 517 U.S. 882, 888 (1996)). The complaint alleges merely that for each year from 2014 to 2018 the plan made payments to Nestle for "Commissioners and Fees." However, the complaint does not contain any non-speculative allegations as to why Nestle received those payments. Without knowing that information, Guyes has no basis to allege that the services didn't provide any value to the Plan, weren't provided for the exclusive benefit of the participants, and didn't warrant the payment of the fees to Nestle. Nor does the complaint identify any single transaction that

15

could form the basis for a prohibited transaction under § 1106(a)(1). Again, the complaint merely states the total amount of money the trust paid to Nestle for each year.

IV. **Leave to Amend**

Guyes seeks leave to amend in light of *Albert*. She argues that justice requires granting her leave to file an amended complaint "in order to supplement her factual allegations given the evolving state of the law as found in *Hughes* and *Albert*." ECF No. 32 at 2. Guyes also contends that permitting her to amend would "allow[] for resolution on the merits rather than dismissal on mere technicalities." *Id.* The defendants argue that the court should deny leave to amend for two reasons. First, according to the defendants, Guyes has not explained her amendments, identified the factual allegations she intends to supplement, or clarified what parts of the proposed amended complaint are intended to address the pleading requirements identified by the Seventh Circuit in *Albert*. Second, the defendants contend that Guyes' proposed amended complaint does not cure the defects of her original complaint.

"A party seeking to amend a complaint after the filing of a responsive pleading must have the consent of the adverse party or must move for leave to file the amended complaint." *Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 792 (7th Cir. 2004) (citing Fed. R. Civ. P. 15(a)). "Leave to file 'shall be given freely when justice so requires.'" *Dubicz*, 377 F.3d at 792 (quoting Fed. R. Civ. P. 15(a)). "Although leave to file a[n] . . . amended complaint should be granted liberally, a district court may deny leave for several reasons including: 'undue delay, bad faith[,] or dilatory motive[,] . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment.'" *Dubicz*, 377 F.3d at 792 (quoting *Park v. City of Chicago*, 297 F.3d 606, 612 (7th Cir. 2002)). "The opportunity to amend a complaint is futile if 'the complaint, as amended, would fail to state a claim upon which relief

16

could be granted.'" *GE Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1085 (7th Cir. 1997) (quoting *In re Burlington Coat Factory S Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)). "This standard is the same standard of legal sufficiency that applies under Rule 12(b)(6)." *GE Capital*, 128 F.3d at 1085 (citing *Burlington Coat*, 114 F.3d at 1434).

Guyes' proposed amended complaint asserts five causes of action: breach of the duty of prudence regarding recordkeeping and administration fees (Count I); breach of the duty of prudence regarding managed account service fees (Count II); failure to adequately monitor other fiduciaries regarding recordkeeping fees (Count III); failure to adequately monitor other fiduciaries regarding service fees (Count IV); and self-dealing (Count V). *See* ECF No. 32-1 ¶¶ 158–98. Guyes does not allege in her proposed amended complaint that she ever enrolled in the managed account services offered by Voya Retirement or that she herself—as opposed to plan participants generally—has ever been charged any fees related to those services. Thus, Guyes' proposed amended complaint does not resolve the Article III standing issue with her duty of prudence service fee claim. The court should find amendment futile as to that claim and the derivative failure to monitor claim (Counts II and IV of the original and proposed amended complaint).

The court should also find amendment would be futile with respect to Guyes' prohibited transactions claim (Count V). The proposed amended complaint abandons Guyes' party-in-interest theory of liability under § 1106(a)(1) and has tacked on a duty of loyalty claim. *See* ECF No. 32-1 ¶¶ 193–98. However, the proposed amendment does not include any additional factual allegations to support this claim. *See id.* ¶¶ 142–48. Guyes' amended self-dealing claim therefore fails for the same reason the original self-dealing claim fails, namely,

the failure to plausibly plead that Nestle was acting as a fiduciary when it authorized and received the payments.

The court should, however, permit Guyes to proceed on her amended duty of prudence (Count I) and failure to monitor (Count III) claims regarding recordkeeping fees. In *Albert*, the Seventh Circuit emphasized "that recordkeeping claims in a future case could survive the 'context-sensitive scrutiny of a complaint's allegations' courts perform on a motion to dismiss." *Albert*, 47 F.4th at 580 (quoting *Dudenhoeffer*, 573 U.S. at 425). Guyes' proposed amended complaint includes several new allegations about recordkeeping services. *See* ECF No. 32-1 ¶¶ 38–61, 79–122, 158–68. The gist of these new allegations is that, for very large plans like the Nestle plan ("mega plans," to use Guyes' term), recordkeeping services are essentially fungible—that is, the services are essentially the same no matter who provides them. Thus, the proposed amendment—which alleges that the fees were excessive relative to the level and quality of recordkeeping services received, an allegation the Seventh Circuit suggested was lacking in the *Albert* complaint—provides the necessary context to make this claim plausible. Justice therefore requires allowing Guyes to file an amended complaint as to her recordkeeping claims.

## CONCLUSION

For the foregoing reasons, I **RECOMMEND** that the court **GRANT** the defendants' motion to dismiss plaintiff's complaint, ECF No. 13, and **DISMISS with prejudice** the following claims: breach of the duty of loyalty regarding recordkeeping and administration fee; breach of the duties of prudence and loyalty regarding managed account service fees; failure to adequately monitor other fiduciaries regarding managed account service fees; and engaging in prohibited transactions. I further **RECOMMEND** that the court **GRANT in part**

**and DENY in part** the plaintiff's Civil L.R. 7(h) expedited non-dispositive motion for leave to file amended complaint, ECF No. 32, permitting the plaintiff to proceed on her recordkeeping claims only (Counts I and III).

Under 28 U.S.C. § 636(b)(1)(B) and (C), Fed. R. Civ. P. 72(b)(2), and E.D. Wis. Gen. L. R. 72(c), written objections to any recommendation herein, or part thereof, may be filed within fourteen days of service of this recommendation. The parties must file objections in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Failure to file a timely objection with the district judge shall result in a waiver of a party's right to appeal. If no response or reply will be filed, please notify the district judge in writing.

Dated in Milwaukee, Wisconsin, this 21st day of November, 2022.

_____
STEPHEN C. DRIES
United States Magistrate Judge