# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN
### GREEN BAY DIVISION

LORIE M. GUYES, *et al.*,

    Plaintiff,

    v.

NESTLÉ USA, INC.,

    and

BOARD OF DIRECTORS OF
NESTLÉ USA, INC.,

    and

JOHN AND JANE DOES 1-30,

    Defendants.

Case No. 1:20-cv-01560-WCG

Hon. William C. Griesbach

---

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

PROCEDURAL HISTORY................................................................................................. 3

LEGAL STANDARD.......................................................................................................... 5

ARGUMENT ....................................................................................................................... 6

I.   PLAINTIFF'S DUTY OF PRUDENCE CLAIM SHOULD BE DISMISSED
     (COUNT I)................................................................................................................ 7

     A.   Plaintiff's Complaint Does Not Include Any Specific Allegations of
          Misconduct.................................................................................................... 7

     B.   Plaintiff Fails to Allege Facts about the Services Received by the Plan and
          the Comparator Plans.................................................................................... 8

     C.   Plaintiff's Conclusory Assertion that All "Mega Plans" Are Offered—or
          Receive—the Same Recordkeeping Services Should Be Rejected Out of
          Hand. .............................................................................................................. 9

     D.   Plaintiff's Fee "Comparisons" Do Not Support a Plausible Inference of
          Fiduciary Breach. ....................................................................................... 13

          1.   Plaintiff uses inaccurate and inconsistent methodologies to
               calculate fees. .................................................................................. 14

          2.   Even if Plaintiff's allegations are accepted as true, Plaintiff's fee
               comparisons still fail to support a plausible inference of
               imprudence....................................................................................... 16

     E.   Plaintiff's Allegation that Defendants Imprudently Failed to Conduct
          RFPs Should Be Rejected as a Matter of Law. .......................................... 16

II.  PLAINTIFF'S DUTY TO MONITOR CLAIM SHOULD BE DISMISSED
     (COUNT III) .......................................................................................................... 17

CONCLUSION.................................................................................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Albert v. Oshkosh Corp.*,
    47 F.4th 570 (7th Cir. 2022) ........................................................................... *passim*

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...................................................................................... 5, 6

*Baumeister v. Exelon Corp.*,
    2022 WL 4477916 (N.D. Ill. Sept. 22, 2022) ....................................................... 3, 9

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .......................................................................................... 6

*Cunningham v. USI Ins. Servs., LLC*,
    2022 WL 889164 (S.D.N.Y. Mar. 25, 2022) ......................................................... 15

*Del Castillo v. Cmty. Child Care Council of Santa Clara Cnty., Inc.*,
    2019 WL 6841222 (N.D. Cal. Dec. 16, 2019) ...................................................... 17

*Ferguson v. Ruane Cunniff & Goldfarb Inc.*,
    2019 WL 4466714 (S.D.N.Y. Sept. 18, 2019) ...................................................... 17

*Fifth Third Bancorp v. Dudenhoeffer*,
    573 U.S. 409 (2014) .......................................................................................... 6

*Fritton v. Taylor Corp.*,
    2022 WL 17584416 (D. Minn. Dec. 12, 2022) ..................................................... 14

*Gonzalez v. Northwell Health, Inc.*,
    --- F. Supp. 3d ----, 2022 WL 4639673 (E.D.N.Y. Sept. 30, 2022) ..................... 8, 15

*Howell v. Motorola, Inc.*,
    633 F.3 552 (7th Cir. 2011) ............................................................................... 17

*Hughes v. Northwestern Univ.*,
    142 S. Ct. 737 (2022) ......................................................................................... 7

*Krutchen v. Ricoh USA, Inc.*,
    2022 WL 16950264 (E.D. Pa. Nov. 15, 2022) ..................................................... 11

*Loomis v. Exelon Corp.*,
    658 F.3d 667 (7th Cir. 2011) ............................................................................. 16

Case 1:20-cv-01560-WCG-SCD   Filed 02/02/23   Page 3 of 24   Document 43

*Marks v. Trader Joe's Co.*,
    2020 WL 2504333 (C.D. Cal. Apr. 24, 2020) ................................................................14, 17

*Martin v. CareerBuilder, LLC*,
    No. 19-cv-6463, 2020 WL 3578022 (N.D. Ill. July 1, 2020) ...................................17

*Mator v. Wesco Distrib., Inc.*,
    2022 WL 3566108 (W.D. Pa. Aug. 18, 2022) ............................................... *passim*

*Matousek v. MidAmerican Energy Co.*,
    51 F.4th 274 (8th Cir. 2022) ................................................................1, 2, 3, 13

*Nell v. Zell*,
    677 F. Supp. 2d 1010 (N.D. Ill. 2009) .......................................................18

*Sacerdote v. N.Y. Univ.*,
    328 F. Supp. 3d 273 (S.D.N.Y. 2018)........................................................11

*Singh v. Deloitte LLP*,
    2023 WL 186679 (S.D.N.Y. Jan. 13, 2023) ...............................................12

*Smith v. CommonSpirit Health*,
    37 F.4th 1160 (6th Cir. 2022) ........................................................1, 3, 10

*Pension Benefit Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v.*
    *Morgan Stanley Inv. Mgmt. Inc.*,
    712 F.3d 705 (2d Cir. 2013)........................................................6, 7, 8

*Terraza v. Safeway Inc.*,
    241 F. Supp. 3d 1057 (N.D. Cal. 2017) .....................................................12

*White v. Chevron Corp.*,
    2016 WL 4502808 (N.D. Cal. Aug 29, 2016) ..........................................18

*White v. Chevron Corp.*,
    2017 WL 2352137 (N.D. Cal. May 31, 2017) ..........................................14

*Williamson v. Curran*,
    714 F.3d 432 (7th Cir. 2013) ...............................................................12

*Woznicki v. Aurora Health Care Inc.*,
    2022 WL 1720093 (E.D. Wis. May 27, 2022)..........................................2, 13, 16

Case 1:20-cv-01560-WCG-SCD   Filed 02/02/23   Page 4 of 24   Document 43

# INTRODUCTION

Plaintiff's Amended Complaint contains just one remaining claim that Defendants breached their fiduciary duty under the Employee Retirement Income Security Act of 1974 ("ERISA") by failing to ensure that participants in the Nestlé USA, Inc. (Nestlé) 401(k) Plan ("the Plan") paid reasonable recordkeeping fees. But Plaintiff's Amended Complaint comes no closer to stating a plausible claim for breach of fiduciary than the original complaint. Plaintiff still does not identify any specific procedural defects or misconduct supporting a breach of fiduciary duty claim. Instead, she relies on implausible and flawed circumstantial allegations regarding the price the Plan paid for recordkeeping services compared to purportedly similar plans. These circumstantial allegations are insufficient to state a viable claim.

As the Seventh Circuit and multiple other courts of appeal have held, a plaintiff cannot simply compare the alleged expenses of his or her plan to the alleged expenses of a handful of other plans to avoid dismissal. Rather, a plaintiff must allege ***facts*** that demonstrate that any comparator plans that allegedly paid lower fees are similar in terms of the type and quality of services they received. *Albert v. Oshkosh Corp.*, 47 F.4th 570, 579-80 (7th Cir. 2022) (affirming dismissal of the recordkeeping claim because the complaint "failed to allege that the [recordkeeping] fees were excessive relative to the services rendered") (quoting *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1169 (6th Cir. 2022)); *see also Matousek v. MidAmerican Energy Co.*, 51 F.4th 274, 279 (8th Cir. 2022) (citing *Albert*); *Smith*, 37 F.4th at 1169.

Rather than allege concrete facts to satisfy this pleading standard, Plaintiff relies on the overarching and unsupported assertion that recordkeepers offer all "mega" retirement plans standardized "bundles" of recordkeeping and administrative services. *See, e.g.*, ECF No. 41, Am. Compl. ¶¶ 40-43. But this fails to provide the kind of additional context regarding the Plan's

recordkeeping services that the Seventh Circuit held was necessary in *Albert*. Plaintiff never actually alleges that all "mega" plans ***receive*** the same or similar recordkeeping services—her allegations merely purport to describe the market for recordkeeping services generally. Furthermore, court after court has held that all plans do ***not*** receive the same recordkeeping and administrative services. *See, e.g.*, *Matousek*, 51 F.4th at 279; *Mator v. Wesco Distrib., Inc.*, 2022 WL 3566108, at *4 (W.D. Pa. Aug. 18, 2022), *appeal filed*, No. 22-2552 (3d Cir. Aug. 23, 2022).

Even if Plaintiff could avoid the legal requirement to plead facts about the specific services actually provided to the Plan and its supposed comparators—and she cannot—dismissal would still be required. Plaintiff attempts to compare the Plan's alleged "average" recordkeeping fee to the alleged recordkeeping fees of thirteen cherry-picked comparators—the same approach rejected in *Albert*. But her calculations of the alleged fees paid by the Plan and the comparator plans are inaccurate and based on inconsistent methodologies. And, even if they were accurate, allegations that the Plan paid higher fees than thirteen other hand-picked plans says nothing about whether the Plan's fees were "unreasonable." Plaintiff does not allege facts showing that the comparators' fees are representative of what the hundreds of other plans with similar numbers of participants and total assets pay for similar recordkeeping services. *See, e.g.*, *Woznicki v. Aurora Health Care Inc.*, No. 20-cv-1246-BHL, 2022 WL 1720093, at *3 (E.D. Wis. May 27, 2022) ("Had [the plaintiff] used her flawed formula to calculate the average RK&A fee paid by participants in all, roughly, 63,000 comparable defined contribution plans on the market, a serious outlier might at least raise suspicions. But she compared only 22 plans.").

In all, Plaintiff's new allegations fail to state a viable claim for breach of fiduciary duty. They instead represent the kind of generic, conclusory, and flawed approach to pleading ERISA claims that the Seventh Circuit and other courts have repeatedly rejected. *See, e.g.*, *Albert*, 47 F.4th

at 579-80; *Baumeister v. Exelon Corp.*, 2022 WL 4477916, at *2 (N.D. Ill. Sept. 22, 2022) (dismissing recordkeeping claim where the complaint pled "no facts to show whether the selected comparators receive recordkeeping services of a similar nature and quality to those offered by the Plan's recordkeeper"). As in *Albert*, *Smith*, and *Matousek*, the Court should dismiss this case with prejudice.

## PROCEDURAL HISTORY

Plaintiff filed her original, five-count complaint on October 9, 2020. In Counts I and III, she alleged that Defendants breached their fiduciary duties by allowing the Plan to pay unreasonably high recordkeeping fees and by failing to monitor fiduciaries with respect to those fees. ECF No. 1, Compl. ¶¶ 149-160, 173-179. In Counts II and IV, she alleged that Defendants breached their fiduciary duties by allowing the Plan to pay unreasonably high fees for managed account services and by failing to monitor fiduciaries with respect to those fees. *Id.* ¶¶ 161-172, 180-186. And in Count V, she alleged that Nestlé engaged in prohibited transactions by using plan assets to pay for certain allegedly unnecessary administrative services. *Id.* ¶¶ 187-193.

Defendants moved to dismiss Plaintiff's complaint for lack of standing and failure to state a claim. ECF No. 13, Mot. to Dismiss. While that motion was pending, the Seventh Circuit decided *Albert v. Oshkosh Corp.*, affirming this Court's dismissal of various ERISA breach of fiduciary duty claims in another case filed by this same Plaintiff's counsel, including recordkeeping claims substantively indistinguishable from those in this case. In *Albert*, the Seventh Circuit held that the unadorned allegation that the plan paid higher recordkeeping fees than certain other plans did not state a claim for breach of fiduciary duty. 47 F.4th at 579-80. The Seventh Circuit made clear that any attempt to state a breach of fiduciary duty claim based on comparisons of plan fees must, at a minimum, account for **the type and quality of the services** the plans received. *Id.* at 580.

Defendants filed a notice of supplemental authority with the Court enclosing the Seventh Circuit's decision in *Albert*. ECF No. 31, Notice of Supp. Authority. Plaintiff then filed an expedited motion for leave to amend her complaint to "supplement her factual allegations." ECF No. 32, Motion for Leave Amend, at 2. But the only substantive change she included was a set of generic allegations that recordkeepers offer all "mega" plans "all-you-can-eat" bundles of identical recordkeeping services—and any "minor differences" between services have "little to no material impact on the fees charged by recordkeepers." *See* ECF No. 32-1, Prop. Am. Compl. ¶¶ 43-52, 111-121. In opposition to Plaintiff's motion, Defendants argued, *inter alia*, that the new allegations in the proposed amended complaint failed to distinguish Plaintiff's recordkeeping claim in this case from the nearly identical claim this Court and the Seventh Circuit rejected in *Albert*. ECF No. 33, Opp. Mot. Leave Amend., at 2-3.

On October 3, 2022, the Court referred the pending motions to Magistrate Judge Dries. ECF No. 34, Order. On November 11, 2022, Magistrate Judge Dries issued a Report and Recommendation recommending the Court grant Defendants' motion to dismiss the original complaint in its entirety and grant in part and deny in part Plaintiff's motion for leave to amend. ECF No. 35, Rpt. With respect to Defendants' motion to dismiss, Magistrate Judge Dries recommended the Court dismiss all claims in the original complaint. Specifically, Magistrate Judge Dries found that Plaintiff lacked standing with respect her managed account services claim (*id.* at 9-12), and that Plaintiff failed to adequately allege that Nestlé was acting as a fiduciary with respect to her prohibited transaction claim (*id.* at 13-16). As for the recordkeeping claim, Magistrate Judge Dries held that Plaintiff's "naked fee-to-fee comparison" failed to support a reasonable inference that Defendants breached their fiduciary duties because the complaint did not contain "any allegations concerning the ***specific services*** performed by the comparator plans'

recordkeepers or any allegations supporting a plausible inference that the plan paid more for equivalent services." *Id*. at 8.

Turning to Plaintiff's motion for leave to amend, Magistrate Judge Dries recommended Plaintiff be denied leave to amend her managed account services claim because her proposed amended complaint included no new allegations showing standing. Magistrate Judge Dries also recommended Plaintiff be denied leave to amend her prohibited transaction claims because she failed to add any new allegations to her proposed amended complaint demonstrating Nestlé's fiduciary status, as required to state a prohibited transaction claim. Rpt. at 16-17. However, Magistrate Judge Dries found that Plaintiff's proposed amended complaint contained several new recordkeeping allegations and recommended the Court grant Plaintiff leave to amend with respect to her recordkeeping claim. *Id.* at 18-19. On January 3, 2023, this Court adopted Magistrate Judge Dries' report and recommendation. ECF No. 40. The Court found that Nestlé's "arguments regarding the inadequacy of the plaintiff's allegations are better suited for consideration in the context of a motion to dismiss" with "the benefit of thorough briefing." *Id.* at 2.[1]

Plaintiff's Amended Complaint includes two remaining counts, both related to the Plan's recordkeeping fees. In Count I, Plaintiff claims that Defendants breached their fiduciary duties by failing to ensure the Plan's recordkeeping fees were reasonable. In Count III, Plaintiff claims that Defendants failed to properly monitor the fiduciaries they appointed. Nestlé now moves to dismiss.

## LEGAL STANDARD

To survive a motion to dismiss, a complaint alleging breach of fiduciary duty must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

---

[1]    Plaintiff did not object to the Report and Recommendation.

570 (2007)). Importantly, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* The allegations must allow the Court to infer "more than the mere possibility of misconduct" and must support a "reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678-79.

The Supreme Court has emphasized that motions to dismiss are "important mechanism[s]" for "weeding out meritless claims" in the ERISA context in particular. *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014). This is because "the prospect of discovery in a suit claiming breach of fiduciary duty is ominous, potentially exposing the ERISA fiduciary to probing and costly inquiries and document requests." *Pension Benefit Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 719 (2d Cir. 2013). *Twombly*, *Iqbal*, and *Dudenhoeffer* accordingly serve "to prevent settlement extortion—using discovery to impose asymmetric costs on defendants in order to force a settlement advantageous to the plaintiff regardless of the merits of his suit." *Id.* (quoting *Am. Bank v. City of Menasha*, 627 F.3d 261, 266 (7th Cir. 2010)). As shown below, Plaintiff's Amended Complaint—which relies on generic allegations and speculation rather than concrete, well-pleaded facts—is exactly what these decisions seek to deter.

## ARGUMENT

Plaintiff's claims for breach of fiduciary duty of prudence related to the Plan's recordkeeping fees (Count I) and failure to monitor fiduciaries (Count III) should be dismissed for failure to state a claim. Plaintiff's duty of prudence claim in Count I does not include any direct allegations of imprudence. Her circumstantial allegations, which relate entirely to how the Plan's fees compared to other plans, are flawed and conclusory. Plaintiff's claim that Defendants failed

to monitor the Plan's fiduciary appointees likewise fails because it is entirely derivative of the duty of prudence claim.

## I. PLAINTIFF'S DUTY OF PRUDENCE CLAIM SHOULD BE DISMISSED (COUNT I)

### A. Plaintiff's Complaint Does Not Include Any Specific Allegations of Misconduct.

To prevail on a claim for breach of fiduciary duty of prudence, plaintiffs are generally required to identify specific defects or instances of defendants' misconduct that fail to comport with the process that similarly-situated fiduciaries would employ. *Albert v. Oshkosh Corp.*, No. 20-cv-901, 2021 WL 3932029, at \*5 (E.D. Wis. Sept. 2, 2021), *aff'd*, 47 F.4th 570; *see also St. Vincent Cath. Med. Ctrs. Ret. Plan*, 712 F.3d at 718-19. But Plaintiff's process allegations are entirely conclusory and insufficient under the governing law. For example, Plaintiff alleges that "Defendants failed to regularly monitor the Plan's [recordkeeping] fees paid to covered service providers" (ECF No. 41, Am. Compl. ¶ 95) and "followed an imprudent process" for monitoring recordkeeping fees (*id.* ¶ 97). These generic allegations do not point to any actual defects in Defendants' process or any specific instances of fiduciary misconduct. Plaintiff provides no explanation of what Defendants did (or did not do) in allegedly failing to "regularly monitor" the Plan's fees; nor does Plaintiff explain how the actions taken (or not taken) were imprudent. Indeed, Plaintiff's nonspecific allegations could be asserted against any plan fiduciary in the country and do not plausibly allege a breach of duty. *Hughes v. Northwestern Univ.*, 142 S. Ct. 737, 742 (2022) (requiring "context specific" facts supporting claim based on "the circumstances ... prevailing at the time the fiduciary acts") (citing *Dudenhoeffer*, 573 U.S. at 425).

**B.** **Plaintiff Fails to Allege Facts about the Services Received by the Plan and the Comparator Plans.**

In the absence of "direct" allegations of specific procedural deficiencies that deviated from industry standards, a plaintiff must set forth well-pleaded "circumstantial factual allegations" from which the Court may "reasonably 'infer ... that the [Plan fiduciaries'] process was flawed.'" *St. Vincent Cath. Med. Ctrs. Ret.*, 712 F.3d at 718, 727 (quoting *Braden v. Wal-Mart Stores, Inc.,* 588 F.3d 585, 596 (8th Cir. 2009)). That is, plaintiffs must plead circumstantial allegations that give rise to a "plausible inference" of fiduciary misconduct. *St. Vincent Cath. Med. Ctrs. Ret.*, 712 F.3d at 718-19. Circumstantial allegations that suggest "the ***mere possibility*** of misconduct" are insufficient to state a claim, regardless of how much or how little access a plaintiff purports to have had to underlying facts. *Id.* (emphasis in original).[2]

Yet here, Plaintiff offers only a chart that she claims reflects the Plan's "average" recordkeeping fees from 2014 to 2018, alongside the recordkeeping fees that thirteen other plans allegedly paid in 2018 or later. Am. Compl. ¶¶ 98-100. The Seventh Circuit has squarely rejected this pleading strategy. Under *Albert*, a plaintiff "cannot proceed to discovery solely on the basis that the Plan paid higher recordkeeping fees than a potentially random assortment of nine"—or in this instance, thirteen—"other plans from around the country." 47 F.4th at 579.

Instead, as the Seventh Circuit held in *Albert*, a plaintiff's fee comparisons must, at a minimum, include facts about the ***specific services*** the plan and any purported comparators received. *Id.* (noting that complaint was "devoid of allegations as to the quality or type of

---

[2]     Although courts have acknowledged that plaintiffs often do not have access to information related to fiduciaries' decision-making processes at the pleading stage, they have held that the relevant pleading standard remains the same. Courts have also pointed out that ERISA's "extensive disclosure requirements" ensure that participants have access to a wide-range of information related to plan administration that plaintiffs can use to plead their claims. *See, e.g., Gonzalez v. Northwell Health, Inc.*, --- F. Supp. 3d ----, 2022 WL 4639673, at *7 (E.D.N.Y. Sept. 30, 2022) (noting that ERISA disclosure requirements provide plaintiffs access to plan information that can be used to support a plausible claim for relief).

recordkeeping services the comparator plans provided"); *see also id.* at 580 (affirming dismissal of the recordkeeping claim because the complaint "failed to allege that the [recordkeeping] fees were excessive ***relative to the services rendered***") (quoting *Smith*, 37 F.4th at 1169) (emphasis added). Without this context, the Seventh Circuit held, it is impossible to draw inferences regarding the reasonableness of a plan's fees, much less the prudence of a plan fiduciary in monitoring and negotiating those fees. *Id.*; *see also Baumeister*, 2022 WL 4477916, at *2 (dismissing recordkeeping claim where the complaint "plead[ed] no facts to show whether the selected comparators receive recordkeeping services of a similar nature and quality to those offered by the Plan's recordkeeper").

Contrary to the Seventh Circuit's instruction, the Amended Complaint is "devoid of allegations as to the quality or type of recordkeeping services the comparator plans provided" that may provide the "kind of context that could move this claim from possibility to plausibility." *Albert*, 47 F.4th at 579-80 (quoting *Smith*, 37 F.4th at 1169). Nowhere in the Amended Complaint does Plaintiff explain the type or quality of recordkeeping services that his comparator plans received. Indeed, aside from their inclusion in the chart, the Amended Complaint does not make further mention of any of those plans, let alone describe the recordkeeping services they have purchased.

C. **Plaintiff's Conclusory Assertion that All "Mega Plans" Are Offered—or Receive—the Same Recordkeeping Services Should Be Rejected Out of Hand.**

Plaintiff attempts to circumvent *Albert*'s context-specific requirement by alleging that recordkeepers offer all "mega plans" an "all-you-can-eat" buffet of "standard services" (ECF No. 41, Am. Compl. ¶ 50) and any variation in the scope or quality of the services "has little to no material impact" on fees (*id.* at ¶ 43). Even if Plaintiff were right that recordkeepers ***offer*** "mega

9

plans" standardized bundles of recordkeeping and administrative services, that still does not identify which services the thirteen comparator plans actually received, and for what price, as compared to Nestlé. Plaintiff merely theorizes about the services that recordkeepers offer to the market in general.

To the extent the Amended Complaint could be read to allege that all "mega plans" *receive* "the same standard bundle of RKA services" (Am. Compl. ¶ 52),[3] Plaintiff fares no better. Such a conclusory allegation, with no supporting facts, cannot survive a motion to dismiss. *See Mator*, 2022 WL 3566108, at *7 (granting motion to dismiss, rejecting as insufficient plaintiffs' "conclusory averments that the recordkeepers of comparator plans all offered identical or similar packages of service of the same or similar quality to those received" by the plan) (internal quotation marks omitted).

*Albert*'s fundamental premise is that there *are* material differences in recordkeepers' services that may affect fees. If all large plans truly purchased the same recordkeeping and administrative services, as Plaintiff suggests, courts would not require plaintiffs to allege facts regarding "the quality or type of recordkeeping services" received, or require them to show that the recordkeeping fees are excessive "relative to the services rendered," in the first place. *Albert*, 47 F.4th at 579-80 (discussing cases requiring allegations that plan services were "excessive relative to the services rendered"); *see also Smith*, 37 F.4th at 1169 (rejecting plaintiff's comparison between the plan's recordkeeping fee and an "industry average" recordkeeping fee because the plaintiff "[h]ad not pleaded that the services that [the plan's] fee covers are equivalent to those provided by the plans comprising" the industry average).

---

[3]     The Amended Complaint does not anywhere allege that all mega plans "receive" the same services, but it loosely implies this in several places, without any supporting facts. *See* Am. Compl. ¶¶ 52, 100.

Even before the Seventh Circuit's decision in *Albert*, courts repeatedly recognized that plan services vary widely, and carry proportionate fees. For example, in *Mator v. Wesco Distribution, Inc.*, the plaintiffs offered similarly conclusory assertions that several comparator plans "all offered identical or similar packages of service of the same or similar quality to those received" by the plan. 2022 WL 3566108, at *4 (internal quotation marks omitted). The court held that these were "conclusory allegations" that failed to specify "the types or levels of services that any plan contracted to receive," and were "too generalized and speculative to move into the realm of the plausible." *Id.* at *7. The court dismissed the plaintiffs' complaint in that case and denied any further leave to amend. *Id.* at *9; *see also, e.g.*, *Sacerdote v. N.Y. Univ.*, 328 F. Supp. 3d 273, 299 n.55 (S.D.N.Y. 2018) (discussing fact that fiduciary's desire for a "high-touch" service model justified higher recordkeeping fees). The same result is warranted here.

Since *Albert*, other courts have rejected Plaintiff's conclusory assertion that all large plans receive the same services. In *Krutchen v. Ricoh USA, Inc.*, the court dismissed a recordkeeping claim where the plaintiffs alleged that "all national recordkeepers have the capability to provide" a list of "bundled" services (on an "all-you-can-eat" basis) and "a la carte" services, and that the services provided to the plan there "fell within the broad range" of those available. 2022 WL 16950264, at *1-3 (E.D. Pa. Nov. 15, 2022). The court concluded that the plaintiffs failed to sufficiently allege information about "specific services used" by the plans being compared. *Id.* at *2-3. The court reasoned that, because "[f]iduciaries may select diverse services from bundled offerings or elect additional a la carte services, prioritizing various options differently depending on their plans' unique needs and reasonably choosing to pay more for higher quality services," the court could not—without information on the specific services actually purchased—"assess whether the [plan at issue] even pays for the same services as its comparators, much less what

similarly situated fiduciaries would do." *Id.* (internal quotation marks omitted). Other courts likewise agree that the "allegation that all recordkeepers offer the same range of services does not mean that all plans employing a particular recordkeeper receive an identical subset of services within that range." *Singh v. Deloitte LLP*, 2023 WL 186679, at *5 (S.D.N.Y. Jan. 13, 2023).

The Department of Labor has similarly explained that, beyond the "basic and necessary administrative services, such as plan recordkeeping, accounting, legal, and trustee services," a 401(k) plan may also offer its participants "a host of additional services, such as telephone voice-response systems, access to customer service representatives, educational seminars, retirement planning software, investment advice, electronic access to plan information, daily valuation, and online transactions [and] ... generally the more services provided, the higher the fees."[4] Plaintiff's suggestions that all large plans receive the same recordkeeping services are contrary to these realities.

Finally, if there were any doubt that different plans receive different recordkeeping services, one need look no further than the handful of Form 5500s that Plaintiff incorporates into the Amended Complaint and relies on to calculate fees.[5] Plans may describe the specific services provided to their participants on an "Annual Return/Report of Employee Benefit Plan" filed with

---

[4]    U.S. Dep't of Labor, *A Look at 401(k) Plan Fees* 3 (Sept. 2019), https://www.dol.gov/sites/dolgov/files/ebsa/aboutebsa/our-activities/resource-center/publications/a-look-at-401k-plan-fees.pdf; *see also* Daniel Aronowitz, *Euclid Fiduciary, Debunking Recordkeeping Fee Theories in "Excessive" Fee Cases* 14 (2022), https://www.euclidspecialty.com/wp-content/uploads/2022/04/Euclid-Fiduciary-Whitepaper-Debunking-Recordkeeping-Fee-Theories-April-2022-Rev-Ed.pdf ("[Plaintiffs] assert that recordkeeping is a commodity with no service variables. But that is not true, as there are different levels of service.").

[5]    In addition to the allegations set forth in a complaint, the Court may consider documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice, when deciding a Rule 12(b)(6) motion to dismiss. *See Williamson v. Curran*, 714 F.3d 432, 435-36 (7th Cir. 2013). On a motion to dismiss in the ERISA context, courts routinely consider plans' annual Form 5500 filings and participant disclosures. *See, e.g.*, *Terraza v. Safeway Inc.*, 241 F. Supp. 3d 1057, 1066–67 (N.D. Cal. 2017) (collecting cases).

the DOL (also known as a "Form 5500") using one or more of approximately 50 different "service codes." Ex. A, 2018 Form 5500 Instructions, at 28-29 (identifying service codes). These Form 5500s demonstrate that the different plans received a broad range of different services. For example, the services T. Rowe Price provided to the Kindred 401(k) Plan (Am. Compl. ¶ 100) included recordkeeping and information management services (Code 15), trustee services (Codes 21 and 25), investment management services (Code 28), participant communications (Code 38), "other services" (Code 49), recordkeeping fees (Code 64), and account maintenance fees (Code 65), among others. Ex. B, Kindred 401(k) Plan Form 5500 (2018), at 7. By contrast, the Form 5500 for the comparator Sutter Health Retirement Income Plan (Am. Compl. ¶ 100) described the fees paid to Fidelity as including sub-transfer agency fees (Code 60), recordkeeping fees (Code 64), and account maintenance fees (Code 65). Ex. C, Sutter Health Retirement Income Form 5500 (2018), at 7. This wide variation in the types of services covered by the different recordkeepers' fees makes it impossible to draw any reliable inferences regarding the reasonableness of the Plan's fees relative to the comparators. *Matousek*, 51 F.4th at 279.

### D. Plaintiff's Fee "Comparisons" Do Not Support a Plausible Inference of Fiduciary Breach.

Plaintiff compares the Plan's alleged "average" recordkeeping fee to the alleged recordkeeping fees of thirteen cherry-picked comparators. But Plaintiff's alleged fee "calculations" are inconsistent and inaccurate. And, even if they were correct, she does not allege facts showing that her comparator plans' fees are representative of what the hundreds of other plans with similar numbers of participants and total assets pay for similar recordkeeping services. *See, e.g.*, *Woznicki*, 2022 WL 1720093, at *3.

### 1. Plaintiff uses inaccurate and inconsistent methodologies to calculate fees.

Plaintiff's various "methodologies" for calculating fees across the Plan and the comparator plans are inconsistent and fatally flawed. With respect to several purported comparators, Plaintiff calculated the per participant recordkeeping fees by simply dividing the amount of "direct compensation" listed on the comparators' Form 5500 filings by the number of participants in the plan. *See, e.g.*, Am. Compl. ¶ 100 (citing Sutter Health Retirement Income Form 5500 (2018) (Ex. C)). This method **underestimates** how much participants in these plans actually paid for recordkeeping services by failing to include any additional "indirect" compensation. Although it is not clear how Plaintiff calculated the Plan's fees—and she never explains it[6]—it is clear that Plaintiff did **not** use this method to calculate the Plan's fees. Had she done so, she would have arrived at a per participant recordkeeping fee of **just $6.00**, not $60.00. *See* Ex. D, Nestlé Plan Form 5500 Annual Reports (Excerpts), at 7, 14, 21, 28, 35.

These inconsistencies are not just troubling. They fundamentally undermine the plausibility of Plaintiff's claims that the Plan's fees were excessive relative to the services rendered. As one court recently explained, "because the math Plaintiffs used to calculate the [plan's] annual per-participant recordkeeping fee differs so fundamentally from the math Plaintiffs used to calculate these other plans' 2018 per-participant recordkeeping fees, these other plans' fees are not plausible comparators and say nothing helpful about whether the [plan's] recordkeeping fees are too high." *Fritton v. Taylor Corp.*, No. 22-cv-00415, 2022 WL 17584416, at *7 (D. Minn.

---

[6]     Plaintiff's guesswork regarding what the Plan paid cannot support a plausible claim. *Marks v. Trader Joe's Co.*, 2020 WL 2504333, at *6 (C.D. Cal. Apr. 24, 2020) ("Plaintiffs' guess that the Plan pays $140 per participant for recordkeeping fees has no factual basis, and Plaintiffs admit that they do not actually know how much the recordkeeping fees are.") (internal quotation marks omitted); *White v. Chevron Corp.*, 2017 WL 2352137, at *19 (N.D. Cal. May 31, 2017) (rejecting plaintiffs' allegations regarding the amount paid in fees as "guesses" where they could not be reconciled with publicly-available data, including Form 5500 filings).

Dec. 12, 2022); *see also Mator*, 2022 WL 3566108, at *8 (comparing Form 5500s and concluding that "Plaintiffs have inconsistently included indirect compensation when calculating fees for the [challenged] Plan, while excluding it for [a comparator] plan"); *Cunningham v. USI Ins. Servs., LLC*, 2022 WL 889164, at *5 (S.D.N.Y. Mar. 25, 2022) ("Plaintiff's allegations also crucially fail because there is no 'indication of how [she] calculated the per-participant fees for recordkeeping and administrativ[e] costs' for the Plan and each of the comparable retirement savings plans.") (quoting *Wehner v. Genentech, Inc.*, 2021 WL 507599, at *6 (N.D. Cal. Feb. 9, 2021)); *Gonzalez*, 2022 WL 4639673, at *10 (dismissing claims based on comparisons that inconsistently compared direct and indirect fees).

Plaintiff's supposed fee comparisons suffer from multiple other flaws. Her allegation that her comparator plans are of "similar sizes with similar amounts of money under management, receiving a similar level and quality of services, compared to the average annual RKA fees paid by the Plan" is simply wrong. Am. Compl. ¶ 100. Plaintiff's thirteen comparators are ***not*** of "similar size[] with similar amounts of money under management." *Id.* In fact, the comparator plans' participant counts range from 13,248 to 82,788, and their assets range from $355.7 million to ***$17.2 billion***. *Id.* Meanwhile, the Plan has approximately 39,000 participants and $4 billion in assets (as of 2018). *Id.* These huge discrepancies alone illustrate why courts require plaintiffs to identify the specific services received by the plan and any purported comparators rather than just fall back on generic descriptors. As other courts have noted, such wide ranges in the number of participants and plan assets "raise serious doubt as to the plausibility of how the purported comparator plans are indeed comparable." *Mator*, 2022 WL 3566108, at *8.

## 2. Even if Plaintiff's allegations are accepted as true, Plaintiff's fee comparisons still fail to support a plausible inference of imprudence.

Finally, Plaintiff fails to state a claim because she compares the Plan's fees to only a tiny subset of other plans. As Defendants explained in their original motion to dismiss, the Department of Labor database identifies over 700 plans with similar numbers of participants and assets. ECF No. 14, Mem. Mot. Dismiss, at 19 n.9 (identifying over 700 defined contribution plans similar to the comparator plans). Plaintiff, however, compares the Plan's fees to the fees paid by *just 13* of these Plans. Plaintiff does not allege that these plans are representative of the broader market or represent the range of reasonable fees paid by comparable plans. Accordingly, Plaintiff has, at best, alleged that a small handful of plans paid less than the Plan. This is insufficient as a matter of law to support a plausible inference that Defendants breached their fiduciary duties with respect to the negotiation or monitoring of the Plan's recordkeeping fees. *Albert*, 47 F.4th at 579 (holding the mere existence or availability of lower cost services on the market is not sufficient to support a plausible claim). As the Seventh Circuit held in *Loomis v. Exelon Corp.*, and reiterated in *Albert*, fiduciaries are not required to "scour the market" searching for the cheapest fund or services. *Loomis v. Exelon Corp.*, 658 F.3d 667, 670 (7th Cir. 2011); *see also Woznicki*, 2022 WL 1720093, at *3 ("Had [the plaintiff] used her flawed formula to calculate the average RK&A fee paid by participants in all, roughly, 63,000 comparable defined contribution plans on the market a serious outlier might at least raise suspicions. But she compared only 22 plans.").[7]

### E. Plaintiff's Allegation that Defendants Imprudently Failed to Conduct RFPs Should Be Rejected as a Matter of Law.

Plaintiff alleges that Defendants' process was imprudent because "Defendants failed to effectively solicit quotes and/or competitive bids from other recordkeepers, including but not

---

[7] Plaintiff never explains how she selected these thirteen plans from the multitude of large 401(k) plans across the country.

limited to Voya." Am. Compl. ¶ 96. But the Seventh Circuit held in *Albert* that identical allegations fail to state a plausible claim for relief as a matter of law: "[i]n *Divane*, we rejected the notion that a failure to regularly solicit quotes or competitive bids from service providers breaches the duty of prudence." *Albert*, 47 F.4th at 579-80. Other courts have held likewise. *See, e.g.*, *Ferguson v. Ruane Cunniff & Goldfarb Inc.*, 2019 WL 4466714, at *8 (S.D.N.Y. Sept. 18, 2019) ("Though Plaintiffs' allegation that the ... Defendants did not seek competitive bids for Plan services is factual, it alone fails to give rise to a *reasonable* inference of imprudence.") (internal citation and quotation marks omitted); *Del Castillo v. Cmty. Child Care Council of Santa Clara Cnty., Inc.*, 2019 WL 6841222, at *5 (N.D. Cal. Dec. 16, 2019) ("[The] absence of competitive bidding ... without more, does not support Plaintiffs' allegations that the [defendants] acted imprudently."); *Marks*, 2020 WL 2504333, at *7 (same). Accordingly, even if Plaintiff's allegation that Defendants "did not regularly solicit quotes and/or competitive bids" constituted a well-pleaded allegation, it nevertheless fails to state a claim as a matter of law under Seventh Circuit precedent.

## II.    PLAINTIFF'S DUTY TO MONITOR CLAIM SHOULD BE DISMISSED (COUNT III)

Plaintiff's duty to monitor claim should be dismissed for the same reason Magistrate Judge Dries recommended dismissal of the original duty to monitor claim. Under Seventh Circuit precedent, without an underlying breach by the agent or appointee subject to monitoring, there can be no failure to monitor. *Howell v. Motorola, Inc.*, 633 F.3 552, 572-73 (7th Cir. 2011); *Martin v. CareerBuilder, LLC*, No. 19-cv-6463, 2020 WL 3578022, at *6 (N.D. Ill. July 1, 2020). For the reasons set forth above, Plaintiff has not alleged an underlying breach of fiduciary duty related to Defendants' negotiation and management of the Plan's recordkeeping fees. Accordingly, Plaintiff's derivative failure to monitor claim must also be dismissed.

In addition to failing to allege an actionable underlying breach, Plaintiff's monitoring claim is subject to dismissal because it is not based on adequate well-pleaded allegations. In support of this claim, Plaintiff offers merely conclusory allegations that Defendants "fail[ed] to monitor and evaluate the performance of individuals responsible for Plan recordkeeping fees," "fail[ed] to monitor the process by which the Plan's recordkeeper was evaluated," and "fail[ed] to remove individuals responsible for Plan recordkeeping fees." Am. Comp. ¶ 183. These assertions, which state "only in the most general terms that the [defendants] breached their duty to monitor," are not enough to support a claim. *Nell v. Zell*, 677 F. Supp. 2d 1010, 1023-24 (N.D. Ill. 2009), *as amended* (Mar. 11, 2010); *see also White v. Chevron Corp.*, 2016 WL 4502808, at *19 (N.D. Cal. 2016) (a plaintiff must allege "*facts* showing how the monitoring *process* was deficient") (emphasis added).

## CONCLUSION

For the above reasons, this Court should dismiss Plaintiff's Amended Complaint with prejudice.

Dated: February 2, 2023

Respectfully submitted,

*/s/ Nancy G. Ross*
Nancy G. Ross
Megan E. Troy
Samuel P. Myler
Mayer Brown LLP
71 South Wacker Drive
Chicago, IL  60606
(312) 782-0600
nross@mayerbrown.com
mtroy@mayerbrown.com
smyler@mayerbrown.com

Brantley Webb
1999 K St. NW
Washington, DC  20006
(202) 263-3188
bwebb@mayerbrown.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on February 2, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to all counsel of record.

*/s/ Nancy G. Ross*
Nancy G. Ross