LORIE M. GUYES, *et al.*,

    Plaintiff,

    v.

NESTLÉ USA, INC.,

    and

BOARD OF DIRECTORS OF
NESTLÉ USA, INC.,

    and

JOHN AND JANE DOES 1-30,

    Defendants.

Case No. 1:20-cv-01560-WCG

Hon. William C. Griesbach

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT**

# TABLE OF CONTENTS

                                                                                                    Page

I.   PLAINTIFF'S RECORDKEEPING CLAIM SHOULD BE DISMISSED ...................... 3

     A.   Plaintiff's Additional Allegations Regarding the "Fungibility" of
          Recordkeeping Services Fail to Support a Claim .................................................. 3

          1.   Recent Decisions Reject Plaintiff's "Fungibility" Theory......................... 4

          2.   Plaintiff's Reliance on Coyer is Misplaced ............................................... 5

     B.   Plaintiff's Claims are Based on Inapposite Apples-to-Oranges
          Comparisons ....................................................................................................... 8

     C.   Plaintiff's Fee Comparisons Do Not Support a Plausible Inference of
          Fiduciary Misconduct ....................................................................................... 10

     D.   Plaintiff's Allegation that Defendants Failed to Solicit Competitive Bids
          Fails to State a Claim ....................................................................................... 12

II.  PLAINTIFF FAILS TO STATE A MONITORING CLAIM ........................................ 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*,
   727 F.3d 502 (6th Cir. 2013) ..................................................................................................10

*Albert v. Oshkosh Corp.*,
   47 F.4th 570 (7th Cir. 2022) .............................................................................................. *passim*

*Coyer v. Univar Sols. USA Inc.*,
   2022 WL 4534791 (N.D. Ill. Sept. 28, 2022) ....................................................................5, 6, 7

*Cunningham v. USI Ins. Servs., LLC*,
   2022 WL 889164 (S.D.N.Y. Mar. 25, 2022) ............................................................................8

*Del Castillo v. Cmty. Child Care Council of Santa Clara Cnty., Inc.*,
   2019 WL 6841222 (N.D. Cal. Dec. 16, 2019) .......................................................................13

*Divane v. Nw. Univ.*,
   953 F.3d 980 (7th Cir. 2020) ..................................................................................................12

*Ferguson v. Ruane Cunniff & Goldfarb Inc.*,
   2019 WL 4466714 (S.D.N.Y. Sept. 18, 2019).......................................................................13

*Fifth Third Bancorp v. Dudenhoeffer*,
   573 U.S. 409 (2014)..............................................................................................................2, 8

*Gonzalez v. Northwell Health, Inc.*,
   ---F. Supp. 3d---, 2022 WL 4639673 (E.D.N.Y. Sept. 30, 2022)............................................7

*Hecker v. Deere & Co.*,
   556 F.3d 575 (7th Cir. 2009) ...................................................................................................2

*Martin v. CareerBuilder, LLC*,
   2020 WL 3578022 (N.D. Ill. July 1, 2020)..............................................................................6

*Mator v. Wesco Distrib., Inc.*,
   2022 WL 3566108 (Aug. 18, 2022).....................................................................................8, 11

*Neil v. Zell*,
   677 F. Supp. 2d 1010 (N.D. Ill. 2009) ...................................................................................14

*Probst v. Eli Lilly and Co.*,
   2023 WL 1782611 (S.D. Ind. Feb. 3, 2023) ................................................................. *passim*

*Riley v. Olin Corp.*,
    2023 WL 371872 (E.D. Mo. Jan. 24, 2023) ..............................................................................6

*Sigetich v. Kroger Co.*,
    2023 WL 2431667 (S.D. Ohio Mar. 9, 2023).................................................................. *passim*

*Smith v. CommonSpirit Health*,
    37 F.4th 1160 (6th Cir. 2022) ...............................................................................................13

*Sweda v. Univ. of Pa.*,
    923 F.3d 320 (3d Cir. 2019)....................................................................................................6

*Szalanski v. Arnold*,
    609 F. Supp. 3d 698 (W.D. Wis. 2022) .................................................................................14

*White v. Chevron Corp.*,
    2017 WL 2352137 (N.D. Cal. May 31, 2017), *aff'd* 752 F. App'x 453 (9th
    Cir.2018) ................................................................................................................................8

*Wilson v. Craver*,
    994 F.3d 1085 (9th Cir. 2021) ................................................................................................7

*In re Xerox Corp. Erisa Litig.*,
    483 F. Supp. 2d 206 (D. Conn. 2007).....................................................................................14

# INTRODUCTION

Plaintiff's opposition to Defendants' motion to dismiss reveals the faulty foundation forming the basis for her claims and highlights the irreparable defects that require dismissal with prejudice. In opposing Defendants' motion, Plaintiff does not dispute that her claims rest entirely on allegations comparing the Nestle Plan's recordkeeping fees to those of a handful of allegedly comparable defined-contribution plans. Although the Seventh Circuit rejected this same approach to pleading ERISA claims in *Albert v. Oshkosh Corp.*, 47 F.4th 570 (7th Cir. 2022), Plaintiff argues that her Amended Complaint addresses the deficiencies the Seventh Circuit identified in *Albert* and provides the kind of context necessary to move her "claim from possibility to plausibility." *Id.* at 580 (internal quotation marks omitted). Not so.

*First*, Plaintiff's additional allegations concerning the "essential fungibility," Opp. at 11, 14, of recordkeeping services provided to large plans fail to provide the kind of additional context the Seventh Circuit held is required to state a plausible claim based on fee comparisons. In *Albert*, the Seventh Circuit held that fee comparisons like those at issue here must, at a minimum, be accompanied by sufficient additional context to show that the fees are "excessive relative to the services rendered." *Albert*, 47 F.4th at 580 (internal quotation marks omitted). Since *Albert*, numerous courts have held that conclusory allegations that plans all received "similar" services fail to satisfy this requirement. Furthermore, recent decisions issued since Defendants moved to dismiss Plaintiff's Amended Complaint have rejected the very theory underlying Plaintiff's claims in this case—i.e., that all large plans receive "nearly identical" services—on the grounds that it is both wholly conclusory and facially implausible. *Probst v. Eli Lilly and Co.*, 2023 WL 1782611, at *10-11 (S.D. Ind. Feb. 3, 2023); *Sigetich v. Kroger Co.*, 2023 WL 2431667, at *9 (S.D. Ohio Mar. 9, 2023).

*Second*, Plaintiff's allegations comparing the alleged fees paid by the Plan and the comparator plans are contradicted by the materials she purports to rely on to calculate those fees. Plaintiff's half-baked explanations regarding how she calculated the Plan's and the comparators' fees only serve to highlight additional flaws and inconsistencies that cast further doubt on the plausibility of her claims.

*Third*, even if the Court accepts Plaintiff's allegations regarding both the services the plans received and the cost of those services, the Amended Complaint still fails to state a claim. At most, Plaintiff's fee comparisons suggest that the Plan paid higher recordkeeping fees than 13 plans of varying sizes offered by employers in a variety of industries across the country. As Plaintiff acknowledges, even among similarly-sized plans receiving "nearly identical" services, recordkeeping fees vary. Plaintiff's Amended Complaint contains no allegations supporting a plausible inference that the variation between what the Plan paid and what the comparators paid is evidence of imprudence. Moreover, the Amended Complaint does not contain any allegations regarding how the Plan's fees compare to those of the hundreds of plans with similar numbers of participants. Although Plaintiff argues that she is not required to compare the Plan's fees to "hundreds or thousands of other plans," Opp. at 26, in order to state a claim, she must do more than show that a few cherry-picked plans were able to obtain the same services for less. *See, e.g. Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009) ("[N]othing in ERISA requires every fiduciary to scour the market to find and offer the cheapest possible fund.").

For these reasons, and as more fully explained below, Plaintiff's Amended Complaint does not state a viable claim. Accordingly, this Court should dismiss Plaintiff's claims with prejudice.

**ARGUMENT**

**I.     PLAINTIFF'S RECORDKEEPING CLAIM SHOULD BE DISMISSED**

Plaintiff's recordkeeping claim in this case, like the claim in *Albert*, is based on a single chart comparing the Plan's alleged fees to those of a handful of other purportedly similar plans. In *Albert*, the Seventh Circuit held that this pleading strategy failed to support a plausible inference of imprudence absent additional allegations sufficient to show that the plan's fees were excessive "relative to the services rendered." *Albert*, 47 F.4th at 580 (internal quotation marks omitted). Such a showing requires a plaintiff to plead facts about "the quality or type of recordkeeping services the comparator plans provided." *Id.* at 579.

**A.     Plaintiff's Additional Allegations Regarding the "Fungibility" of Recordkeeping Services Fail to Support a Claim**

In her response, Plaintiff concedes that the Amended Complaint does not allege facts about the specific services that either the Plan or the comparator plans received. Opp. at 7-9. Instead, Plaintiff relies on a series of generic allegations related to the "fungibility" of recordkeeping services provided to large plans. *Id.* at 11-12. Specifically, Plaintiff alleges without any factual support that all large plans receive "materially the same level and quality of services," *Id.* at 11, and that any variation in the services "has little to no material impact on the fees charged by recordkeepers," *Id.* This approach is fatally flawed as a matter of law. As Defendants explained in their opening brief, Mem. at 12-17, Plaintiff's generic and conclusory allegations regarding the "fungibility" of recordkeeping services do not provide the kind of context the Seventh Circuit has instructed is necessary to support a plausible claim. None of Plaintiff's arguments to the contrary have merit.

### *1. Recent Decisions Reject Plaintiff's "Fungibility" Theory*

As Defendants noted, numerous district courts have rejected conclusory allegations that large plans receive "essentially the same services" for failing to provide sufficient context to support a plausible inference of imprudence. Mem. at 15-16 (citing *Mator v. Wesco Distrib., Inc.*, 2022 WL 3566108, at *4 (Aug. 18, 2022); *Krutchen v. Ricoh USA, Inc.*, 2022 WL 16950264, at *1 (E.D. Pa. Nov. 15, 2022); *Singh v. Deloitte LLP,* ---F. Supp. 3d---, 2023 WL 186679, at *5 (S.D.N.Y. Jan. 13, 2023)).[1] Since Defendants moved to dismiss Plaintiff's Amended Complaint, additional District Courts have come to the same conclusion in cases filed by the same counsel representing Plaintiff in this case, including two recent decisions: *Probst* and *Sigetich*.

In *Probst*, as here, Probst alleged that the defendants breached their fiduciary duty of prudence by failing to monitor the plan's recordkeeping fees. Probst relied on fee comparisons nearly identical to those at issue here (and rejected in *Albert*). In addition, Probst alleged, as Plaintiff does here, that "all mega plans receive nearly identical recordkeeping services and that any difference in services [are] immaterial to the price of those services." *Probst*, 2023 WL 1782611, at *10. The *Probst* court held that the allegation that all large plans receive "nearly identical" recordkeeping services was "wholly conclusory" and failed to establish that the fees were "excessive relative to the services rendered." *See id.* at *9-10.[2] In addition, the *Probst* court found that Probst's allegation that differences in services do not affect price was "not plausible"

---

[1] Tellingly, Plaintiff did not attempt to distinguish these cases or argue that they were wrongly decided.

[2] Plaintiff's response to *Probst* is limited to a footnote in which she claims that the District Court misconstrued *Albert*'s holding. Specifically, Plaintiff contends that *Albert* does not require plaintiffs to describe the "specific types of services comparator plans received relative to the Plan," but rather that they simply allege facts that the fees were "excessive relative to the services rendered." Opp. at 4 n.3 (citing *Probst*, 2023 WL 1782611, at *10). Plaintiff's argument hinges on a flawed premise. *Albert*'s ruling that plaintiffs are required to plead facts that the recordkeeping services are "excessive relative to the services rendered" by definition requires plaintiffs to provide well-pleaded allegations regarding the types of services that were rendered. Generic and conclusory allegations that all plans receive the same services, such as those at issue here, do not provide any basis to evaluate fees relative to those services.

in light of Probst's own allegations showing that the 13 comparator plans forming the basis for her fee comparisons paid fees of between $23 and $39, demonstrating that prices do indeed vary. *Id.* at 11.

In *Sigetich*, the court reached the same result. *Sigetich* addressed claims and theories identical to those raised here and in *Probst*, including Plaintiff's allegation that all recordkeeping services are the same and that "minor variations in the level and quality of RK&A services . . . has little to no material impact on the fees charged by recordkeepers." 2023 WL 2431667, at *9 (internal quotation marks omitted). The *Sigetich* court held, like the court in *Probst*, that these allegations "fail[ed] to give any context to the services rendered to the Kroger Plan or to the services rendered to her comparable plans." *Id.* The court also held that it was simply not plausible that all recordkeeping services were the same and that minor variations had no effect on fees. *Id.*

The claims and theories at issue here are identical to those that the *Probst* and *Sigetich* courts dismissed. Accordingly, this Court should follow the lead of both *Probst* and *Sigetich* and likewise dismiss Plaintiff's claims with prejudice. As Defendants explained in their opening brief, and the *Probst* and *Sigetich* courts correctly found, Plaintiff's theory that recordkeeping services are "fungible" is both implausible and a transparent attempt to circumvent *Albert*'s holding that plaintiffs must identify the specific services the Plan and the comparators received. Mem. at 13-17. Given the identical nature of the theories at issue, Plaintiff cannot distinguish either *Probst* or *Sigetich*.

### 2. *Plaintiff's Reliance on* **Coyer** *is Misplaced*

Plaintiff largely ignores the holdings of the numerous courts discussed above and relies heavily on a single District Court case, *Coyer v. Univar Sols. USA Inc.*, 2022 WL 4534791 (N.D. Ill. Sept. 28, 2022), which she claims supports her position. Plaintiff's reliance on *Coyer* is misplaced.

5

As an initial matter, *Coyer* was wrongly decided and is inconsistent with the Seventh Circuit's directive in *Albert*, as expressly recognized by the *Probst* court. *See Probst*, 2023 WL 1782611, at *12 (holding that conclusory allegations of the type at issue in *Coyer* do not "satisfy the Seventh Circuit's directive in *Albert* that a plaintiff must plead specific facts showing that the recordkeeping fees were excessive relative to the services rendered" (internal quotation marks omitted)). In *Coyer*, the court held that the plaintiff's allegation that the comparators all received "*at least* the same services" as the plan at issue provided sufficient context for her fee comparisons. 2022 WL 4534791 at *5. This holding, however, was based on the Third Circuit's decision in *Sweda v. Univ. of Pa.*, 923 F.3d 320 (3d Cir. 2019), which District Courts in the Seventh Circuit have rightly eschewed. *See Martin v. CareerBuilder, LLC*, 2020 WL 3578022, at *5 n.8 (N.D. Ill. July 1, 2020) (noting that, to the extent "the circuits have differed on how to deal with some of the nitty-gritty details of Plan design," it "goes without saying that the Court . . . must be particularly attentive to the nuances of Seventh Circuit law"). Regardless of the relative merits of *Sweda*, Seventh Circuit precedent controls here.

Although the court in *Coyer* claimed to rely on the Seventh Circuit's decision in *Albert*, its conclusion that the plaintiff's fee comparisons supported a plausible inference of imprudence based on the plaintiff's bald assertion that the comparators received "at least the same services" overlooked *Albert*'s emphasis on the need for "context specific" facts. *See Albert*, 47 F.4th at 575, 579–80. In this respect, *Coyer* is an outlier. As noted above, numerous courts that have considered allegations similar to the ones in *Coyer* have held that such allegations are too conclusory, generic, or vague to give rise to a plausible inference of imprudence. *See* Mem. at 15-16; *see also Riley v. Olin Corp.*, 2023 WL 371872, at *3-4 (E.D. Mo. Jan. 24, 2023) (holding that "the plaintiff must

6
Case 1:20-cv-01560-WCG-SCD   Filed 03/17/23   Page 10 of 20   Document 48

'plead that the administrative fees are excessive in relation to the *specific services* the recordkeeper provided to the *specific plan* at issue'" (citation omitted)).

*Coyer* is an outlier for good reason. To credit conclusory generalizations like those in *Coyer* (and those here) would allow every plaintiff to open the door to costly discovery by listing a few plans that allegedly pay lower fees, and then simply asserting that all large plans receive the same services for the same price, without any plan-specific factual context. *See Gonzalez v. Northwell Health, Inc.*, ---F. Supp. 3d---, 2022 WL 4639673, at *10–11 (E.D.N.Y. Sept. 30, 2022) (dismissing claim where complaint "does not even list all the services that Transamerica provides to the [p]lan," because "[i]f plaintiff's minimal allegations were sufficient to state a claim then other plaintiffs could state a breach of fiduciary duty claim against every plan with more than 100 participants and $5 million dollars in assets that charged more than $35 per participant in direct fees") (citing *Hughes v. Nw. Univ.*, 142 S. Ct. 737, 742 (2022)); *cf. Wilson v. Craver*, 994 F.3d 1085, 1093 (9th Cir. 2021) (a plaintiff cannot rely on generic economic principles that would apply in every ERISA action to state a prudence claim).

In any event, regardless of whether *Coyer* was rightly or wrongly decided, Plaintiff's claim that *Coyer* is "exactly on point," Opp. at 19-20, is incorrect. In *Coyer*, the court credited the allegation that the comparator plans received "*at least* the same services [as the challenged plan] for less." *Coyer*, 2022 WL 4534791, at *5 (internal quotation marks omitted). Here, Plaintiff alleges that all large plans receive the same services, and that any variation in services "has little to no material impact on the fees charged by recordkeepers. Opp. at 11, 14. In *Coyer*, the plaintiffs did not advance this theory, and therefore, the *Coyer* court did not have occasion to reject it as the courts did in *Probst* and *Sigetich*.

### B.     Plaintiff's Claims are Based on Inapposite Apples-to-Oranges Comparisons

As Defendants explained in their opening brief, Plaintiff's allegations regarding the amounts the Plan and the comparators paid for recordkeeping services are unreliable and employed inconsistent methods for calculating the plans' fees. Mem. at 18-20. To begin, Plaintiff argues that any scrutiny of her fee allegations involves a "factual dispute" that cannot be considered on a motion to dismiss. Opp. at 25. This argument is untenable in light of the numerous cases that have considered the methodology behind fee allegations like those Plaintiff advances here. *See Probst*, 2023 WL 1782611, at *11 ("Because [Probst] relies on the Form 5500s and provides information from them in her Amended Complaint, the Court finds it appropriate to consider them in ruling on the Motion to Dismiss."); *Mator*, 2022 WL 3566108, at *8 (examining plaintiffs' method for calculating plans' fees and discussing "several flaws that cast doubt" on the plausibility of the plaintiffs' claims); *Cunningham v. USI Ins. Servs., LLC,* 2022 WL 889164, at *5 (S.D.N.Y. Mar. 25, 2022) (dismissing claims based on fee comparisons that failed to specify how fees were calculated); *White v. Chevron Corp.*, 2017 WL 2352137, at *18 (N.D. Cal. May 31, 2017) (characterizing plaintiff's attempt to calculate plan's recordkeeping fees as "guesswork" that failed to state a plausible claim), *aff'd* 752 F. App'x 453 (9th Cir.2018). Indeed, this is precisely the type of "careful, context-sensitive scrutiny" that the Supreme Court has instructed is necessary to "divide the plausible sheep from the meritless goats" when evaluating ERISA claims. *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014).

Defendants argued, Mem. at 18, that Plaintiff's calculation of the comparator's fees understated the actual fees the comparators paid by excluding indirect compensation. Although Plaintiff claims that she "considered" both direct and indirect compensation, Opp. at 24, she does not dispute Defendants' point that her fee calculations do not include any indirect compensation the comparator plans paid. With respect to 12 of the 13 comparators, Plaintiff offers no explanation

8

for why she excluded indirect compensation from her calculation of the Plan's fees. *Id.* at 24-25 (discussing only the "Sutter Home" plan). As for the one comparator she does address, Plaintiff explains that she excluded indirect compensation from her fee calculations because the financial statements accompanying the plan's Form 5500 filings indicated that some of the indirect compensation the recordkeeper received was returned to the plan as revenue credits. *Id.* at 24-25. The financial statements she cites, however, do not state that *all* the indirect compensation the recordkeeper received was returned to the plan. *Id.* (describing certain "revenue sharing" amounts being returned to the plan as revenue credits); *see also*, ECF No. 43-3, Sutter Health Form 5500, at 33 (financial statement accompanying Sutter Health plan Form 5500). Ultimately, Plaintiff's attempt to explain why indirect compensation was not included in her fee calculations leaves the record as undisputed that indirect compensation was not included for the comparators, rendering the comparisons worthless for pleading purposes.

Next, Plaintiff explains that in calculating the Nestle Plan's recordkeeping fees, she could not calculate the per participant fees by dividing the direct compensation listed in the Form 5500 for the Plan by the number of participants in the Plan because the Plan is part of a Master Trust. Opp. at 25. Plaintiff argues that in order to calculate the Plan's fees she had to consider the fees disclosed in both the Form 5500 for the Plan and the fees disclosed in the Master Trust. *Id.* Again, however, Plaintiff's explanation illustrates why her fee calculations and comparisons are not apples-to-apples. The Form 5500 for the Master Trust—specifically, the Nestle in the USA Savings Trust—indicates that it covers *multiple* defined contribution plans, not just the plan at issue in this case. Ex. A, Nestle in the USA Savings Trust Form 5500 (2018), at 41 (identifying the "Nestle 401(k) Savings Plan," the "Nestle USA Inc. Hourly Retirement Savings Plan," and the "Nestle USA C&S Savings Plan" as "participating plans" in the Nestle in the USA Savings Trust).

9

Plaintiff does not say how (if at all) she determined what portion of the fees disclosed in the Form 5500 for the Master Trust were allocated to the Plan. At a minimum, the simple fact that fees for the Plan were paid both directly from the Plan and from a separate trust highlights a notable difference between the Plan and the purported comparator plans.

Finally, in response to Defendants' argument, Mem. at 16-17, that the Plan and the comparator plans received different services based on the different service codes in their Form 5500s, Plaintiff does not dispute that the service codes for the various plans differ. Instead, she contends that some of the service codes do not actually describe types of services, but rather types of compensation. Opp. at 24 ("[T]hese codes cannot be viewed as evidence of service provided by Fidelity, their recordkeeper, because the only Form 5500 codes listed for Sutter Home are compensation codes that are not describing the services provided."). Plaintiff's response is a red-herring. Regardless of whether the comparators' Form 5500 filings use "compensation codes" or "service codes," the fact remains that the codes all differ, thereby casting further doubt on the plausibility of her claim. As the court noted in *Probst*, at a minimum, the ambiguity inherent in the service codes "undermines the validity of the Form 5500s as an effective tool for comparing RKA fees." *Probst*, 2023 WL 1782611, at *11.

### C. Plaintiff's Fee Comparisons Do Not Support a Plausible Inference of Fiduciary Misconduct

Even if Plaintiff's allegations regarding the "fungibility" of recordkeeping services were true and her allegations regarding what the Plan and the comparator plans paid were entirely accurate, still the Amended Complaint does not support a plausible inference that Defendants breached their fiduciary duty. *See, e.g.*, *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) ("The plausibility of an inference depends on a host of

considerations, including common sense and the strength of competing explanations for the defendant's conduct.").

*First,* as Defendants pointed out in their opening brief, it is not plausible to infer that Defendants acted imprudently based simply on Plaintiff's fee comparisons because Plaintiff's thirteen comparators are neither similar in terms of number of participants nor assets under management. Mem. at 19. The comparator plans' participant counts range from 13,248 to 82,788, and their assets range from $355.7 million to $17.2 billion. Am. Compl. ¶ 100. Not only have courts held that such wide ranges in the number of participants and plan assets "raise serious doubt" as to the plausibility of a plaintiff's comparisons, *Mator*, 2022 WL 3566108, at *8, the *Probst* and *Sigetich* courts reached that conclusion with respect to many of the exact same comparators at issue in this case. *See Probst*, 2023 WL 1782611, at *5, *11 (comparing Eli Lilly's plan to wide range of participants and assets under management for multiple comparator plans at issue in this case, including Sanofi U.S. Group Savings Plan, Sutter Health Retirement Income Plan, and Kindred 401(k) Plan); *Sigetich*, 2023 WL 2431667, at *4, *10 (comparing Kroger's plan to wide range of participants and assets under management for multiple comparator plans at issue in this case, including Sutter Health 403(b) Plan, Kaiser Permanente Plan, and Wells Fargo Plan).

*Second,* the fact that one plan paid higher fees than another, even if all of the services the plans received are identical, is not a plausible basis for inferring that the plan's fiduciaries engaged in misconduct or acted imprudently. *See Albert*, 47 F.4th at 579 ("This court has repeatedly emphasized that the cheapest investment option is not necessarily the one a prudent fiduciary would select."). Indeed, as Plaintiff's own allegations demonstrate, recordkeeping fees vary, even among plans that allegedly received the same exact services. Just among the 13 purportedly reasonable comparators Plaintiff alleges, recordkeeping fees ranged from as low as $20 dollars to

as high as $35 dollars. Am. Compl. ¶ 100 (compare Google LLC 401(k) Savings Plan and Fortive Retirement Savings Plan).

*Finally,* Plaintiff's contention that she is not comparing the Plan's fees to the lowest cost service, but rather is "laser-focused" on the "*reasonable* alternative available in the pertinent market" does not support an inference of imprudence with respect to the Plan's fees. Opp. at 26. The fact that one plan's fees were higher than the "reasonable" fee paid by another plan does not mean that that plan's fees were excessive, much less suggest that the former plan's fiduciaries were imprudent. The difference between the two fees is entirely consistent with the fact that there is a wide range of "reasonable" fees, even among plans that receive purportedly similar services.

### D. Plaintiff's Allegation that Defendants Failed to Solicit Competitive Bids Fails to State a Claim

In *Albert*, the Seventh Circuit squarely rejected Plaintiff's theory that a "failure to regularly solicit quotes or competitive bids from service providers breaches the duty of prudence." *Albert*, 47 F.4th at 579; *accord Divane v. Nw. Univ.*, 953 F.3d 980, 990–91 (7th Cir. 2020). Plaintiff argues that the Seventh Circuit's holding that competitive bidding is not required *may* be overturned by the Seventh Circuit when it decides *Divane* on remand from the Supreme Court. Plaintiff's speculation as to what may happen in the future is not grounds to allow her competitive bidding claim to go forward. Under binding precedent, Plaintiff cannot state a claim for imprudence based on an alleged failure to conduct competitive bidding. *See, e.g.*, *Probst*, 2023 WL 1782611, at *9 ("[T]he Court rejects the notion that Ms. Probst's allegation that Lilly did not conduct competitive bidding on a regular basis is sufficient to state a claim for breach of the duty of prudence. The Seventh Circuit has instructed that there is no such requirement under ERISA.").

Further, even if Plaintiff is correct that the failure to solicit competitive bids remains "one factor that may establish inferentially an imprudent fiduciary process," Opp. at 21-22, Plaintiff's

competitive bidding allegation still fails to support a plausible claim. As an initial matter, Plaintiff does not actually allege that Defendants did not solicit competitive bids, but rather that they failed to do so "effectively." Am. Compl. ¶ 96. Plaintiff's vague allegation that Defendants' competitive bidding process was merely *ineffective* is wholly conclusory and devoid of any context that might support a plausible claim. Plaintiff does not allege how often a prudent fiduciary would have engaged in competitive bidding, who would have submitted bids in response to the solicitation, and whether any recordkeeper capable of servicing the Plan would have agreed to provide the same services for less. Without some additional context to support her conclusory allegation that Defendants' competitive bidding process was ineffective, the Amended Complaint does not state a claim. *See, e.g.*, *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1169 (6th Cir. 2022) (plaintiff fails to plausibly allege facts to infer imprudent recordkeeping fees where plaintiff did not plead that "equivalent" services were available at lower rates); *Ferguson v. Ruane Cunniff & Goldfarb Inc.*, 2019 WL 4466714, at *8 (S.D.N.Y. Sept. 18, 2019) (same); *Del Castillo v. Cmty. Child Care Council of Santa Clara Cnty., Inc.*, 2019 WL 6841222, at *5 (N.D. Cal. Dec. 16, 2019) (same).

## II.     PLAINTIFF FAILS TO STATE A MONITORING CLAIM

Finally, Plaintiff concedes that her duty to monitor claim rises and falls with the breach of fiduciary duty claim at this stage in the proceedings. *See* Opp. at 27-28. Therefore, because Plaintiff has failed to state a breach of fiduciary duty claim, the duty to monitor claim should be dismissed as well.

In the event that Plaintiff's breach of fiduciary duty claim is allowed to proceed, the Court should still dismiss her failure to monitor claim on the ground that she has not pleaded any specific deficiency with respect to the manner in which Defendants monitored the Plan's fiduciaries responsible for the recordkeeping arrangement. Plaintiff does not dispute that the Amended Complaint fails to allege any facts with respect to Defendants' monitoring process. Instead she

13
Case 1:20-cv-01560-WCG-SCD   Filed 03/17/23   Page 17 of 20   Document 48

argues that "because the appropriate ERISA mandated monitoring procedures vary according to the nature of the Plan at issue and other facts and circumstances, an analysis of the precise contours of the defendants' duty to monitor at this stage is premature." *In re Xerox Corp. Erisa Litig.*, 483 F. Supp. 2d 206, 215 (D. Conn. 2007). Plaintiff's reliance on *In re Xerox Corp.* is misplaced. *In re Xerox Corp.*'s holding is inconsistent with how District Courts in the Seventh Circuit have approached duty to monitor claims. *See, e.g.*, *Szalanski v. Arnold*, 609 F. Supp. 3d 698, 706 (W.D. Wis. 2022); *Neil v. Zell*, 677 F. Supp. 2d 1010, 1023-24 (N.D. Ill. 2009). Additionally, *In re Xerox Corp.*'s deferential approach is inconsistent with subsequent Supreme Court precedent emphasizing the responsibility of District Courts to scrutinize plaintiffs' allegations in ERISA cases to ensure that they state plausible claims. *Albert*, 47 F.4th at 577 ("Courts apply a 'careful, context-sensitive scrutiny of a complaint's allegations' to 'divide the plausible sheep from the meritless goats'" (quoting *Dudenhoeffer*, 573 U.S. at 425)).

## CONCLUSION

For the foregoing reasons, Plaintiff's Amended Complaint should be dismissed with prejudice.

Dated: March 17, 2023                    Respectfully submitted,

                                         */s/ Nancy G. Ross*
                                         Nancy G. Ross
                                         Megan E. Troy
                                         Samuel P. Myler
                                         Mayer Brown LLP
                                         71 South Wacker Drive
                                         Chicago, IL  60606
                                         (312) 782-0600
                                         nross@mayerbrown.com
                                         mtroy@mayerbrown.com
                                         smyler@mayerbrown.com

                                         Brantley Webb
                                         1999 K St. NW
                                         Washington, DC  20006
                                         (202) 263-3188
                                         bwebb@mayerbrown.com

                                         *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on March 17, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to all counsel of record.

*/s/ Nancy G. Ross*
Nancy G. Ross