UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

| | |
|---|---|
| LORIE M. GUYES, individually, and as representative of a Class of Participants and Beneficiaries of the Nestle 401(k) Savings Plan, <br><br> Plaintiff, <br><br> v. <br><br> NESTLE USA, INC., et al. <br><br> Defendants | Case No. 1:20-cv-1560-WCG-SCD |

**PLAINTIFF'S SUPPLEMENTAL BRIEF IN LIGHT OF**
***HUGHES V. NORTHWESTERN UNIVERSITY II***

## INTRODUCTION

On April 24, 2023, the Court issued an Order (ECF No. 52), granting Defendants' motion to provide supplemental briefing on the Seventh Circuit's decision in *Hughes v. Northwestern Univ.*, 63 F.4th 615 (7th Cir. 2023) ("*Hughes II*"). Plaintiff, Lorie M. Guyes ("Plaintiff"), by and through her counsel, now files her supplemental brief in further opposition to Defendants' motion to dismiss.

## ARGUMENT

In *Hughes II*, the Seventh Circuit on remand from the United States Supreme Court clarified the pleading standard as applied to ERISA actions and reversed a district court's dismissal of an ERISA claim alleging an ERISA plan charged excessive fees for recordkeeping and investments. *See Hughes II*, 63 F. 4th at 637. Because *Hughes II* relied on materially identical allegations for denying Northwestern's motion to dismiss as to those here, the Court should reject Defendants' motion.

First, *Hughes II* makes clear that the heightened pleading standard of *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409 (2014), does not apply to non-ESOP ERISA cases like this one. *See Hughes*

*II*, 63 F. 4th at 628. Second, *Hughes II* sets out the "*correct* pleading standard for a breach of duty of prudence of ERISA." *Id.*, at 626. (emphasis added). Based on the plausibility test of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), plaintiffs must plausibly allege "enough facts to show that a prudent fiduciary would have taken steps to reduce fees and remove some imprudent investments," *id.*, at 628, and "allege fiduciary decisions outside a range of reasonableness." *Id.*, at 630. This standard is "context-specific," *id.*, at 632, and "[h]ow wide that range of reasonableness is will depend on 'the circumstances . . . prevailing' at the time the fiduciary acts." *Id.*, at 630 (citing *Dudenhoeffer,* 573 U.S. at 425; 29 U.S.C. § 1104(a)(1)(B)). Third, "these cases [do not] say a plaintiff must conclusively rule out *every possible* alternative explanation for a defendant's conduct, no matter how implausible," *Id.,* at 629 (emphasis in original), and "[w]here alternative inferences are in equipoise—that is, where they are all reasonable based on the facts—the plaintiff is to prevail on a motion to dismiss." *Id.*

Here, alternative inferences concerning whether Defendants breached their duty of prudence because they failed to remove their recordkeeper, Voya, who charged excessive fees for recordkeeping services are in equipoise. Indeed, Plaintiff has alleged many of the same facts that the Seventh Circuit found sufficient in *Hughes II* to deny Northwestern's motion to dismiss.

For instance, plaintiffs in *Hughes II* alleged a reasonable per participant fee "[b]ased on the Plans' features, the nature of the administrative services provided by the Plans' recordkeepers, the number of participants in the Plans (approximately 30,000), and the recordkeeping market." *Id.*, at 631. Plaintiff has materially identical recordkeeping allegations in the Amended Complaint. *See* ECF No. 41 (Amended Complaint), ¶ 31, 56, 98 (setting out number of participants in plan and fact that cost is based primarily on participants); ¶¶ 100-101 (comparing the Faith Tech Plan to thirteen other Plans with material identical levels of recordkeeping fees that all large and mega plans receive from recordkeepers); ¶ 105 ($28 reasonable per participant fee); ¶¶ 45-54, 121 (discussing the highly-competitive recordkeeping market for large and mega plans); and ¶¶ 41-43, 81-82, 99, 111, 113, 120

(discussing Plan features and the nature of the administrative services provided by the plan's recordkeeper and by other plans.)

The striking similarities between the recordkeeping allegations in the Amended Complaint and pleadings in *Hughes II* do not end there. *Hughes II* also mentions that plaintiffs asserted that "[t]here are numerous recordkeepers in the marketplace who are *equally* capable of providing a high level of service to large defined contribution plans like the Plans," so that the quality or type of recordkeeping service provided are comparable to the ones that Northwestern used. *Hughes II*, 63 F.4th at 632 (emphasis in original). Likewise, Plaintiff asserts that "[b]ecause dozens of recordkeepers can provide the complete suite of required RKA services, plan fiduciaries can ensure that the services offered by each specific recordkeeper are apples-to-apples comparisons," and "[b]ecause recordkeepers offer the same bundles and combinations of services as their competitors, the market for defined contribution retirement plan services has become increasingly price competitive for plans that have a sizable number of participants." ECF No. 41, ¶¶ 45, 53. As in *Hughes II*, the gist of what Plaintiff is alleging is that recordkeeping services are "commoditized, ... recordkeepers primarily differentiate themselves based on price, and will aggressively bid to offer the best price in an effort to win the business, particularly for jumbo plans like the Plans," and "that recordkeeping services are fungible and that the market for them is highly competitive." *Hughes II*, 63 F.4th at 632. Finally, like the plaintiffs in *Hughes*, Plaintiff alleges that the suggested per participant recordkeeping fee "was a reasonable recordkeeping fee based on the services provided by existing recordkeepers and the Plan['s] features." *Id.*; ECF No. 41, ¶ 100-105.

Nevertheless, Defendants will seek to undermine the obvious similarities between this case and *Hughes II* in at least five ways. **First**. Defendants will likely maintain that *Albert v. Oshkosh Corp.*, 47 F.4th 570 (7th Cir. 2022) continues to control the outcome here and *Hughes II* changed nothing. The Seventh Circuit, however, clearly, *and substantially*, narrowed its holding in *Albert* by pointing out that the plaintiff in *Albert* did not plead that the fees were excessive relative to the recordkeeping

services rendered. *Hughes II*, 63 F.4th at 632 ("*Albert* emphasized the lack of 'allegations as to the quality or type of recordkeeping services the comparator plans provided.'") (citing *Albert*, 47 F.4th at 579). Many other cases on which Defendants will almost certainly rely similarly lack these allegations of the fees being excessive relative to the recordkeeping services rendered. *See, e.g.*, *Probst v. Eli Lilly & Co.*, 2023 WL 1782611, at *10 (S.D. Ind. Feb. 3, 2023). Plaintiff's allegations concerning the commodification of recordkeeping services in a highly-competitive market provide the requisite allegations to establish that the fees were excessive relative to the recordkeeping services rendered. ECF No. 41, ¶¶ 45-54; *Accord Lucero v. Credit Union Ret. Plan Ass'n*, 2023 WL 2424787, at *3 (W.D. Wis. Mar. 9, 2023) ("[A]llegations [of commoditization of recordkeeping services] were missing in *Albert*, and other district courts in the Seventh Circuit have concluded since *Albert* that similar [commoditization] allegations are enough to infer that the services rendered by the cheaper plans are comparable.") (citing *Coyer v. Univar Solutions USA Inc.*, 2022 WL 4534791, at *2 (N.D. Ill. Sept. 28, 2022); *Guyes v. Nestle USA, Inc.*, 2022 WL 18106384, at *8 (E.D. Wis. Nov. 21 2022), *report and recommendation adopted Guyes v. Nestle USA Inc.,* No. 20-CV-1560, 2023 WL 22629, at *1 (E.D. Wis. Jan. 3, 2023)).

**Second**. Although plaintiffs in *Hughes II* provide examples of several other university plans that successfully reduced recordkeeping fees, *Hughes II*, 63 F.4th at 632, Plaintiff has provided thirteen (13) comparator plans (based on DOL Form 5500 filings) who paid lower recordkeeping fees from other recordkeepers, while providing the same commoditized recordkeeping services during the relevant Class Period. ECF No. 41, ¶¶ 41-43, 81-82, 99, 111, 113, 120. Defendants might also maintain that the claims in *Hughes II* are different because that case involved the use of multiple recordkeepers, but *Hughes II* made clear that the recordkeeping claim there was "not limited to a failure to consolidate recordkeepers." *Hughes II*, 64 F.4th at 633.

**Third.** Defendants will claim that allegations concerning the lack of the competitive bidding cannot be part of a plausible breach of the duty of prudence claim. But *Hughes II* states the exact opposite: "We reaffirm that a fiduciary need not *constantly* solicit quotes for recordkeeping services to

comply with its duty of prudence. But fiduciaries who fail to monitor the reasonableness of plan fees and fail to take action to mitigate excessive fees—such as by adjusting fee arrangements, *soliciting bids*, consolidating recordkeepers, negotiating for rebates with existing recordkeepers, or other means—may violate their duty of prudence." *Hughes II*, 63 F.4th at 625-626 (emphasis added).

**Fourth.** It is possible that Defendants will seek to distinguish *Hughes II* based on the size of the disparity between the reasonable recordkeeping fee and the fee charged by the comparator funds. In *Hughes II*, the disparity was four to five times higher than it should have been. *See id.*, at 632. In the Amended Complaint, the disparity is more than two times higher. ECF No. 41, ¶ 107. However, paying $32 per participant more during the Class Period for the same commoditized recordkeeping services in a highly-competitive market is still unreasonable.

**Fifth.** Defendants will undoubtedly argue alternative explanations exist for not removing Voya as its recordkeeper. However, "an equally, if not more, plausible inference would be that [Defendants] neglected to keep its recordkeeping fees . . . at a reasonable level." *Hughes II*, 63 F.4th at 633. Based on Plaintiff's equally plausible inferences, Defendants' "alternative explanations are just not strong enough to justify dismissal of the recordkeeping claims on the pleadings . . . and there are no obvious alternative explanation," as to why Defendants kept Voya as recordkeeper. *Id.* at 629.

Under the context-specific pleading standard advanced by the Seventh Circuit in *Hughes II*, Plaintiff has plausibly alleged that Defendants violated their fiduciary duty of prudence under ERISA by establishing that Defendants should have taken steps to reduce recordkeeping fees and by taking fiduciary decisions outside a range of reasonableness. *See Hughes II*, 63 F.4th at 628, 630.

## CONCLUSION

For all the above reasons, Defendants' motion to dismiss Plaintiff's Amended Complaint should be denied in its entirety.

Dated this 8th day of May, 2023

                Respectfully submitted,

                **s/ *Paul M. Secunda***
                Paul M. Secunda
                WALCHESKE & LUZI, LLC
                235 N. Executive Drive, Suite 240
                Brookfield, WI 53005
                Telephone: 414-828-2372
                *psecunda@walcheskeluzi.com*

                *Counsel for Plaintiff and Proposed Class*