UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**LORIE M. GUYES,**
  *individually, and as representative of a class of participants and beneficiaries of the Nestle 401(k) Savings Plan,*

  **Plaintiff,**

  v.                                                      Case No. 20-CV-1560-WCG-SCD

**NESTLE USA, INC.** and

**BOARD OF DIRECTORS OF NESTLE USA, INC.,**

  **Defendants.**

---

### REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

---

Lorie M. Guyes, a participant in the Nestle 401(k) Savings Plan, has filed a proposed class action under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1101–1461, against Nestle USA, Inc., and the Board of Directors of Nestle USA, Inc. (collectively, "Nestle"). United States District Judge William C. Griesbach has referred the case to me to address any motions. This report and recommendation addresses Nestle's motion to dismiss Guyes' amended complaint. Because Guyes has failed to plausibly allege that the defendants breached their fiduciary duties, I recommend that the court grant the defendants' motion. Moreover, because Guyes has already been given a chance to amend, and because she did not seek leave to amend again in response to the defendants' motion, I recommend that the court dismiss Guyes' claims with prejudice.

## BACKGROUND

Nestle USA, Inc., offers its employees retirement benefits via the Nestle 401(k) Savings Plan. Am. Compl. ¶¶ 5, 25, ECF No. 41. The plan is a defined contribution pension plan under 29 U.S.C. § 1002(34), meaning that Nestle's contributions to the payment of plan costs is guaranteed but the pension benefits are not. *Id.* ¶ 29. Nestle USA is the plan sponsor and plan administrator of the plan. *Id.* ¶ 28. Since 2014, the plan has received recordkeeping and administrative services from Voya. *Id.* ¶¶ 6, 79. In 2018, the plan had over $4.2 billion in assets and nearly 40,000 participants, making it one of the largest defined contribution plans in the nation. *Id.* ¶¶ 30–31.

Guyes worked as a general laborer for Nestle USA from April 2008 until July 2020 and is a participant in the plan. Am. Compl. ¶¶ 20–21. In October 2020, Guyes filed suit individually and as representative of a putative class of plan participants and beneficiaries against Nestle USA, its board of directors, and unnamed members. *See* Compl., ECF No. 1. Guyes later filed an amended complaint asserting five causes of action against Nestle USA and its board of directors. *See generally* Am. Compl. The court, however, permitted Guyes to proceed on only two of those five claims—Counts I and III of the amended complaint. *See* Order, ECF No. 40.[1] Guyes asserts that Nestle breached its fiduciary duties of prudence (Count I) and to monitor other fiduciaries (Count III) regarding fees the Nestle plan paid for recordkeeping and administrative services. Nestle has moved to dismiss those two remaining causes of action for failure to state a claim upon which relief can be granted. *See* Defs.' Mot., ECF No. 42. That motion is fully briefed and ready for resolution. *See* Defs.' Mem., ECF No.

---

[1] For a more robust procedural history, see the court's prior report and recommendation, ECF No. 35.

43; Pl.'s Resp., ECF No. 45; Defs.' Reply, ECF No. 48; Pl.'s Suppl. Br., ECF No. 53; Defs.' Suppl. Br., ECF No. 54.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). To survive a motion to dismiss, a complaint must "allege[] facts that show the claim is 'plausible on its face.'" *Taha v. Int'l Bhd. of Teamsters, Local 781*, 947 F.3d 464, 469 (7th Cir. 2020) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Taha*, 947 F.3d at 469 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

When analyzing a motion to dismiss pursuant to Rule 12(b)(6), courts must "construe the complaint in the light most favorable to plaintiff, accept all well-pleaded facts as true, and draw reasonable inferences in plaintiff's favor." *Taha*, 947 F.3d at 469 (citing *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013)). However, courts "need not accept as true . . . unsupported conclusory factual allegations." *Divane v. Northwestern Univ.*, 953 F.3d 980, 987 (7th Cir. 2020) (quoting *Yeftich*, 722 F.3d at 915), *vacated and remanded on other grounds sub nom. Hughes v. Northwestern Univ.*, 142 S. Ct. 737 (2022) ("*Hughes I*")). Courts may also "ignore any facts alleged in the complaint that undermine the plaintiff's claim." *Divane*, 953 F.3d at 987 (quoting *Tricontinental Indus. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 833 (7th Cir. 2007)).

"In putative ERISA class actions, Rule 12(b)(6) motions are an 'important mechanism for weeding out meritless claims.'" *Albert v. Oshkosh Corp.*, 47 F.4th 570, 577 (7th Cir. 2022) (quoting *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014)). "Courts apply a

3

'careful, context-sensitive scrutiny of a complaint's allegations' to 'divide the plausible sheep from the meritless goats.'" *Id.* "Because 'the circumstances facing an ERISA fiduciary will implicate difficult tradeoffs, [] courts must give due regard to the range of reasonable judgments a fiduciary may make based on her experience and expertise.'" *Albert*, 47 F.4th at 577 (quoting *Hughes I*, 142 S. Ct. at 742). As such, the Seventh Circuit has held that, "[w]hen claiming an ERISA violation, the plaintiff must plausibly allege action that was objectively unreasonable." *Divane*, 953 F.3d at 988 (citing *Amgen Inc. v. Harris*, 136 S. Ct. 758, 760 (2016)).

## DISCUSSION

Guyes contends that Nestle breached its fiduciary duties concerning the plan's recordkeeping fees. To state a breach of fiduciary duty claim under ERISA, "a plaintiff must plead '(1) that the defendant is a plan fiduciary; (2) that the defendant breached its fiduciary duty; and (3) that the breach resulted in harm to the plaintiff.'" *Albert*, 47 F.4th at 579 (quoting *Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 678 (7th Cir. 2016)). The first and third elements are not at issue here. Rather, Nestle insists that Guyes has failed to plausibly plead that the named defendants breached their duty of prudence and duty to monitor other fiduciaries.

### I. Duty of Prudence Claim

ERISA "requires plan fiduciaries to act prudently when managing an employee benefit plan." *Albert*, 47 F.4th at 578 (citing 29 U.S.C. § 1104(a)(1)(B)). A plan fiduciary must discharge its duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." *Hughes v. Northwestern Univ.*, 63 F.4th 615, 626 (7th Cir. 2023) ("*Hughes II*") (quoting 29 U.S.C. § 1104(a)(1)). "[T]he duty of prudence includes a continuing duty to monitor plan expenses

4

and 'incur only costs that are reasonable in amount and appropriate' with respect to the services received." *Hughes II*, 63 F.4th at 631 (quoting *Tibble v. Edison Int'l*, 843 F.3d 1187, 1197 (9th Cir. 2016)). As the Eighth Circuit explained in *Matousek v. MidAmerican Energy Co.*, "[t]he process is what ultimately matters, not the results." 51 F.4th 274, 278 (8th Cir. 2022) (citing § 1104(a)(1)(B)); *see also DeBruyne v. Equitable Life Assurance Soc'y*, 920 F.2d 457, 465 (7th Cir. 1990) ("[T]he ultimate outcome of an investment is not proof of imprudence.").

Guyes maintains that, during the putative class period, Nestle breached its duty of prudence by authorizing the plan to pay unreasonably high fees for recordkeeping and administrative services and by failing to remove its recordkeeper, Voya. Because she doesn't know what process Nestle used to select, retain, or determine the fees paid to Voya, Guyes does not allege any direct instances of misconduct or mismanagement. Instead, Guyes says we should infer an imprudent decision-making process from circumstantial evidence, including Nestle's failure to regularly monitor the plan's recordkeeping fees, failure to effectively solicit quotes or competitive bids from Voya and other recordkeepers, and failure to leverage its substantial bargaining power to negotiate a lower fee. *See* Am. Compl. ¶¶ 30, 95–97.

To support this theory, Guyes compares publicly available data for the Nestle plan with thirteen allegedly comparable plans that are supposedly prudent when it comes to recordkeeping fees. *See* Am. Compl. ¶¶ 94–122. The comparator plans had between about 13,000 to 83,000 participants, had total assets ranging from about $350 million to $17 billion, and paid a total annual recordkeeping fee of $20 to $35 per plan participant:

5

| Plan | Participants | Assets | RK&A Price | RK&A Price /pp | Recordkeeper |
|---|---|---|---|---|---|
| Sutter Health Retirement Income Plan | 13,248 | $406,000,195 | $460,727 | $35 | Fidelity |
| Fortive Retirement Savings Plan | 13,502 | $1,297,404,611 | $472,673 | $35 | Fidelity |
| The Tax Sheltered Annuity Plan Of Texas Children's Hospital | 13,950 | $993,649,270 | $416,395 | $30 | Fidelity |
| DHL Retirement Savings Plan | 14,472 | $806,883,596 | $483,191 | $33 | Fidelity |
| Dollar General Corp 401(k) Savings and Retirement Plan | 16,125 | $355,768,325 | $516,000 | $32 | Voya |
| Sanofi U.S. Group Savings Plan | 24,097 | $5,522,720,874 | $558,527 | $23 | T. Rowe Price |
| The Rite Aid 401(k) Plan | 31,330 | $2,668,142,111 | $1,040,153 | $33 | Alight |
| Kindred 401(k) | 34,092 | $1,299,328,331 | $1,121,564 | $33 | T. Rowe Price |
| The Savings And Investment Plan | 34,303 | $2,682,563,818 | $1,130,643 | $33 | Vanguard |
| **Nestle 401(K) Savings Plan Average Fee** | **39,557** | **$4,140,807,574** | **$2,357,846** | **$60** | **Voya** |
| Kaiser Permanente Supplemental Savings and Retirement Plan | 47,358 | $3,104,524,321 | $1,298,775 | $27 | Vanguard |
| Sutter Health 403(B) Savings Plan | 73,408 | $3,681,162,013 | $1,908,133 | $26 | Fidelity |
| Google LLC 401(K) Savings Plan | 82,725 | $11,786,824,293 | $1,676,414 | $20 | Vanguard |
| Raytheon Savings And Investment Plan | 82,788 | $17,243,679,305 | $2,292,583 | $28 | Fidelity |

*Id.* ¶ 100. Guyes indicates that she based her fee calculations "on 2018 Form 5500 information or the most recent Form 5500 if 2018 [was] not available." *Id.*[2] By contrast, from 2014 through 2018, the Nestle plan averaged about 40,000 participants, over $4 billion in total assets, and a total annual recordkeeping fee of $60 per plan participant:

---

[2] "ERISA and the Internal Revenue Code require the annual submission of Form 5500s for employee benefit plans." *Albert*, 47 F.4th at 579. Guyes does not indicate which plans did not have a 2018 Form 5500 available or which year was used for those plans.

6

| Recordkeeping and Administration (RK&A) Fees | | | | | | |
|---|---|---|---|---|---|---|
| | 2014 | 2015 | 2016 | 2017 | 2018 | *Average* |
| Participants | 39,375 | 39,841 | 40,098 | 39,000 | 39,472 | *39,557* |
| Est. RK&A Fees | $2,461,663 | $2,756,235 | $2,592,736 | $1,847,621 | $2,130,973 | *$2,357,846* |
| Est. RK&A Per Participant | $63 | $69 | $65 | $47 | $54 | *$60* |

*Id.* ¶¶ 98, 100. Based on a trend line constructed from this data, Guyes alleges that "a hypothetical prudent plan fiduciary would have paid on average an effective annual [recordkeeping] fee of around $28 per participant, if not lower." *Id.* ¶¶ 101–05. According to Guyes, the unreasonably excessive recordkeeping fees paid by the Nestle plan cost its participants millions of dollars. *See id.* ¶¶ 106–10.

Nestle argues that the Seventh Circuit's decision in *Albert* requires dismissal of Guyes' recordkeeping fees claim. In *Albert*, the Seventh Circuit affirmed the dismissal of a similar recordkeeping claim that relied on a price comparison of fees charged to other plans. *See Albert*, 47 F.4th at 579. The court first reiterated its prior holdings "that the cheapest investment option is not necessarily the one a prudent fiduciary would select," *id.* (citing *Loomis v. Exelon Corp.*, 658 F.3d 667, 670 (7th Cir. 2011)), and "that a failure to regularly solicit quotes or competitive bids from service providers" alone does not breach the duty of prudence, *Albert*, 47 F.4th at 579 (citing *Divane*, 953 F.3d at 990–91).

Because at the time *Hughes* was still pending on remand from the Supreme Court, the court looked elsewhere for guidance. It relied primarily on *Smith v. CommonSpirit Health*, a case in which the Sixth Circuit "held that an ERISA plaintiff failed to state a duty of prudence claim where the complaint 'failed to allege that the [recordkeeping] fees were excessive relative to the services rendered.'" *Albert*, 47 F.4th at 580 (quoting *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1169 (6th Cir. 2022)). The Seventh Circuit determined that the complaint in its

7

case did not provide "'the kind of context that could move [the recordkeeping] claim from possibility to plausibility' under *Twombly* and *Iqbal*." *Id.* Nevertheless, the court emphasized "that recordkeeping claims in a future case could survive the 'context-sensitive scrutiny of a complaint's allegations' courts perform on a motion to dismiss." *Albert*, 47 F.4th at 580 (quoting *Dudenhoeffer*, 573 U.S. at 425).

After the parties in our case briefed Nestle's motion to dismiss, the Seventh Circuit issued its decision in *Hughes II*. The court clarified the pleading standard for ERISA duty-of-prudence claims, explaining that "a plaintiff must plausibly allege fiduciary decisions outside a range of reasonableness." *Hughes II*, 63 F.4th at 630 (citing *Hughes I*, 142 S. Ct. at 742). "How wide that range of reasonableness is will depend on 'the circumstances . . . prevailing at the time the fiduciary acts.'" *Hughes II*, 63 F.4th at 630 (quoting *Dudenhoeffer*, 573 U.S. at 425). The court also reiterated that "[t]he discretion accorded to an ERISA fiduciary 'will necessarily be context specific.'" *Id.* And it further explained that "the duty of prudence includes a continuing duty to monitor plan expenses and 'incur only costs that are reasonable in amount and appropriate' with respect to the services received." *Hughes II*, 63 F.4th at 631 (quoting *Tibble*, 843 F.3d at 1197).

Applying that "newly formulated pleading standard," the *Hughes II* court reversed the dismissal of an excessive recordkeeping fees claim. *Hughes II*, 63 F.4th at 630–34. The court distinguished *Albert*, noting that the complaint in its case alleged that "the quality or type of recordkeeping services provided by competitor providers [were] comparable to that provided by" the plan's recordkeepers. *Hughes II*, 63 F.4th at 632. The court further noted that the complaint alleged that recordkeeping services for all "jumbo plans . . . are fungible and that the market for them is highly competitive." *Id.* In other words, unlike the plaintiffs in *Albert*,

8

Case 1:20-cv-01560-WCG   Filed 08/23/23   Page 8 of 13   Document 60

the plaintiffs in *Hughes II* provided the required context to allege that their plan's recordkeeping fees "were excessive relative to the recordkeeping services rendered." *Id.* (citing *Smith*, 37 F.4th at 1169).

Like the complaint in *Hughes II*, the operative complaint here includes the allegations missing from the complaint in *Albert,* namely, that Voya provided plan participants standardized, bundled recordkeeping and administrative services that all "mega plans"—those with over $500 million in assets—receive from their recordkeepers. *See* Am. Compl. ¶¶ 25, 38–52. It also alleges that recordkeepers for all mega plans provide more or less the same level and quality of service and that any minor variations do not materially affect the fees charged. *See id.* ¶¶ 38–61. Thus, according to the amended complaint, the market for recordkeeping services is highly price-competitive for mega plans, such that plans with more participants can negotiate a lower per-participant rate. *See id.* ¶¶ 53–61. Given these allegations, Guyes asserts that the Nestle plan's fees were excessive relative to the services received, as the plan could have obtained the same recordkeeping services for less from other, similar recordkeepers. *See id.* ¶¶ 94–122.

Contrary to Nestle's suggestion, Guyes does not need to describe the specific recordkeeping and administrative services received by the Nestle plan and the comparator plans. In *Hughes II*, the Seventh Circuit clarified that level of specificity is not required at the pleading stage. The complaint in *Hughes II* alleged that there were "numerous recordkeepers in the marketplace who [were] *equally* capable of providing a high level of service to large defined contribution plans like the Plans." *Hughes II*, 63 F.4th at 632. That allegation, according to the court, suggested that the quality or type of recordkeeping services provided by other recordkeepers was comparable to that of the plan's recordkeepers. Likewise, the

9

operative complaint in this case alleges that other recordkeepers were providing the same level and quality of service to other mega plans as Voya provided to the Nestle plan. It also alleges that the plan received a standard bundle of recordkeeping services. Nestle says that such conclusory allegations, with no supporting facts, cannot survive a motion to dismiss. However, the allegations in *Hughes II* were arguably even more conclusory and less supported than the allegations here, and yet the Seventh Circuit found them sufficient.

Pleading that recordkeeping fees were too high, however, is not sufficient to state an ERISA duty-of-prudence claim. Rather, the plaintiff must "plead[] sufficient facts to render it plausible that [the plan] incurred *unreasonable* recordkeeping fees." *Hughes II*, 63 F.4th at 631 (emphasis added). In *Matousek*, the Eighth Circuit explained that "[t]he key to nudging an inference of imprudence from possible to plausible is providing 'a sound basis for comparison—a meaningful benchmark'—not just alleging that 'costs are too high, or returns are too low.'" 51 F.4th at 278 (quoting *Davis v. Wash. Univ. in St. Louis*, 960 F.3d 478, 484 (8th Cir. 2020)). The Seventh Circuit embraced that rule in *Albert*, as it relied on the same *Davis* quote to affirm the dismissal of two duty-of-prudence claims. 47 F.4th at 581–82 (quoting *Davis*, 960 F.3d at 484). And in *Hughes II* the court found it crucial that the plaintiffs had alleged that the proposed alternative fee was reasonable "based on the services provided by existing recordkeepers and the Plans' features." 64 F.4th at 632. Indeed, Guyes concedes that she "must use a 'sound basis for comparison—a meaningful benchmark.'" Pl.'s Resp. at 13 (quoting *Coyer v. Univar Sols. USA Inc.*, No. 1:22 CV 0362, 2022 WL 4534791, 2022 U.S. Dist. LEXIS 175972, at *13 (N.D. Ill. Sept. 28, 2022)).

Unlike the factual allegations in *Hughes II*, the alleged facts in this case do not render it plausible that the proposed alternative fee—here $28 per participant—was a reasonable

10

Case 1:20-cv-01560-WCG   Filed 08/23/23   Page 10 of 13   Document 60

recordkeeping fee. Guyes arrived at that $28 figure from a trend line based on the fees paid by thirteen other plans. She says that recordkeeping services essentially are the same for all "mega" 401(k) plans, which she defines as plans with more than $500 million in assets. But two of the thirteen comparator plans do not fit within that definition.

Similarly, the so-called comparators vary significantly in size. The largest plan was more than six times larger than the smallest plan in participant size (83,788 vs. 13,248) and nearly fifty times larger than the smallest plan in asset size ($17,243,679,305 vs. $355,768,325). The Nestle plan was larger than nine of the thirteen other plans in participant size (on average 39,557) and larger than ten of the thirteen other plans in asset size (on average $4,140,807,574). Because the plans are not similarly sized, Guyes' trend line cannot be used to derive a reasonable fee, and she therefore has no basis to allege that the plan's recordkeeping fees were excessive relative to the services rendered.[3] *See Miller v. Packaging Corp. of Am., Inc.*, No. 1:22-cv-271, 2023 WL 2705818, 2023 U.S. Dist. LEXIS 55337, at *18 (W.D. Mich. Mar. 30, 2023) (dismissing a similar recordkeeping fees claim in part because the plaintiff's comparators "varied greatly in terms of the number of participants and the amount of assets held"); *England v. Denso Int'l Am., Inc.*, No. 22-11129, 2023 WL 4851878, 2023 U.S. Dist. LEXIS 131386, at *11–12 (E.D. Mich. July 28, 2023) (same); *Mateya v. Cook Grp. Inc.*, No. 1:22-cv-01271-RLY-TAB, 2023 WL 4608536, 2023 U.S. Dist. LEXIS 124838, at *14–15 & n.4 (S.D. Ind. June 16, 2023) (same); *Sigetich v. Kroger Co.*, No. 1:21-cv-697, 2023 WL 2431667, 2023 U.S. Dist. LEXIS 40359, at *23–24 (S.D. Ohio Mar. 9, 2023) (same); *Probst v. Eli Lilly & Co.*, No. 1:22-cv-01106-JMS-MKK, 2023 WL 1782611, 2023 U.S. Dist. LEXIS 19172, at *35–

---

[3] Guyes' graph also contradicts her allegation that more participants means a lower recordkeeping fee. As just one example, the Sanofi plan had 24,097 participants and paid $23 per participant for recordkeeping services; in contrast, the Raytheon plan had more than three times the number of participants (82,788) but still paid $5 more ($28 total) per participant for recordkeeping services. *See* Am. Compl. ¶¶ 100–05.

11

36 (S.D. Ind. Feb. 3, 2023) (same); *Mator v. Wesco Distrib. Inc.*, No. 2:21-CV-00403-MJH, 2022 WL 3566108, 2022 U.S. Dist. LEXIS 147802, at *24–25 (W.D. Pa. Aug. 18, 2022) (noting that "Such disparities [in comparator plans] raise serious doubt as to plausibility of how the purported comparator plans are indeed comparable.")

Guyes more or less concedes that she has not made an apples-to-apples comparison. She says that she calculated the fees of the thirteen comparator plans using the Form 5500 for each plan. However, for the Nestle plan, she used the Form 5500 for the Nestle in the USA Savings Trust—that is, a master trust that covers multiple defined contribution plans (including the Nestle plan). *See* Defs.' Reply Ex. A, ECF No. 48-1. As Nestle correctly points out, Guyes "does not say how (if at all) she determined what portion of the fees disclosed in the Form 5500 for the Master Trust were allocated to the [Nestle] Plan." Defs.' Reply at 9–10. That the Nestle plan was part of a master trust significantly differentiates that plan from the comparator plans.

Without the comparison to fees paid by other plans, Guyes simply alleges in conclusory fashion that the Nestle plan paid too much for the same quality of services and failed to regularly solicit competitive bids for recordkeeping fees. Those allegations, however, are not enough to cross the line from possibility to plausibility.

## II. Duty to Monitor Claim

Guyes also maintains that Nestle breached its duty to monitor other fiduciaries with respect to recordkeeping and administrative service fees. *See* Am. Compl. ¶¶ 179–85. The parties agree that Guyes' duty-to-monitor claim is wholly derivative of her duty-of-prudence claim. *See* Defs.' Mem. at 17; Pl.'s Resp. at 22. Because I recommend the court dismiss Guyes' duty-of-prudence claim, I recommend the derivative duty-to-monitor claim be dismissed as

well. *See Albert*, 47 F.4th at 583 (citing *Rogers v. Baxter Int'l Inc.*, 710 F. Supp. 2d 722, 740 (N.D. Ill. 2010)).

## CONCLUSION

For the foregoing reasons, I **RECOMMEND** that the court **GRANT** the defendants' motion to dismiss plaintiff's amended complaint, ECF No. 42. Nestle argues for dismissal with prejudice, as other courts have done with similar claims. Guyes did not respond to that argument in her brief in opposition to the defendants' motion. Because Guyes has already amended her complaint once, and because she has not requested leave to amend again, I recommend that this action be dismissed **with prejudice**. *See Matousek*, 51 F.4th at 282–83 (finding no abuse of discretion where a district court dismissed a complaint raising a similar recordkeeping claim "with prejudice without giving the plaintiffs a chance to amend it").

Under 28 U.S.C. § 636(b)(1)(B) and (C), Fed. R. Civ. P. 72(b)(2), and E.D. Wis. Gen. L. R. 72(c), written objections to any recommendation herein, or part thereof, may be filed within fourteen days of service of this recommendation. The parties must file objections in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Failure to file a timely objection with the district judge shall result in a waiver of a party's right to appeal. If no response or reply will be filed, please notify the district judge in writing.

Dated in Milwaukee, Wisconsin, this 23rd day of August, 2023.

_____
STEPHEN C. DRIES
United States Magistrate Judge

13

Case 1:20-cv-01560-WCG   Filed 08/23/23   Page 13 of 13   Document 60

well. *See Albert*, 47 F.4th at 583 (citing *Rogers v. Baxter Int'l Inc.*, 710 F. Supp. 2d 722, 740 (N.D. Ill. 2010)).

## CONCLUSION

For the foregoing reasons, I **RECOMMEND** that the court **GRANT** the defendants' motion to dismiss plaintiff's amended complaint, ECF No. 42. Nestle argues for dismissal with prejudice, as other courts have done with similar claims. Guyes did not respond to that argument in her brief in opposition to the defendants' motion. Because Guyes has already amended her complaint once, and because she has not requested leave to amend again, I recommend that this action be dismissed **with prejudice**. *See Matousek*, 51 F.4th at 282–83 (finding no abuse of discretion where a district court dismissed a complaint raising a similar recordkeeping claim "with prejudice without giving the plaintiffs a chance to amend it").

Under 28 U.S.C. § 636(b)(1)(B) and (C), Fed. R. Civ. P. 72(b)(2), and E.D. Wis. Gen. L. R. 72(c), written objections to any recommendation herein, or part thereof, may be filed within fourteen days of service of this recommendation. The parties must file objections in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Failure to file a timely objection with the district judge shall result in a waiver of a party's right to appeal. If no response or reply will be filed, please notify the district judge in writing.

Dated in Milwaukee, Wisconsin, this 23rd day of August, 2023.

_____
STEPHEN C. DRIES
United States Magistrate Judge